# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER SESSION, 1998

FILED

April 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9804-CR-00129 |
| | ) | |
| Appellee, | ) | GREENE COUNTY |
| | ) | |
| V. | ) | HON. JAMES E. BECKNER, JUDGE |
| | ) | |
| BOBBY DALE FRANKLIN, SR. | ) | (AGGRAVATED SEXUAL |
| | ) | BATTERY; AGGRAVATED RAPE; |
| Appellant. | ) | RAPE OF A CHILD) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

GREG W. EICHELMAN                 JOHN KNOX WALKUP
District Public Defender              Attorney General & Reporter

MICHAEL A. WALCHER              ELIZABETH B. MARNEY
Assistant Public Defender            Assistant Attorney General
1609 College Park Drive              2nd Floor, Cordell Hull Building
Morristown, TN 37813               425 Fifth Avenue North
                                                   Nashville, TN 37243

                                                   C. BERKELEY BELL, JR.
                                                   District Attorney General

                                                   ERIC D. CHRISTIANSEN
                                                   Assistant District Attorney General
                                                   109 South Main Street, Suite 501
                                                   Greeneville, TN 37743

OPINION FILED _____

AFFIRMED AS MODIFIED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Bobby Dale Franklin, appeals as of right his convictions for aggravated sexual battery, aggravated rape, and rape of a child, following a jury trial in the Criminal Court of Greene County. The convictions are as follows:

| OFFENSE | | DATE OF OFFENSE (as alleged in presentment) | SENTENCE |
|---|---|---|---|
| Count One: | aggravated sexual battery | between March 1990 and ___ 1992 | twelve (12) years |
| Count Two: | aggravated sexual battery | ___ 1992 | twelve (12) years |
| Count Three: | aggravated rape | summer 1992 | twenty-five (25) years |
| Count Four: | rape of a child | between ___ 1992 and ___ 1993 | twenty-five(25) years |
| Count Five: | rape of a child | June 3, 1995 | twenty-five (25) years |
| Count Six: | rape of a child | June 4, 1995 | twenty-five(25) years |
| Count Seven: | aggravated sexual battery | between June 5 and June 9, 1995 | twelve (12) years |
| Count Eight: | aggravated sexual battery | June 29, 1992 | twelve (12) years |

The trial court ordered his four convictions for rape to run consecutively with each other and concurrent to the four convictions for aggravated sexual battery, for an effective sentence of 100 years. In this appeal, Defendant raises the following six (6) issues:

I. Whether the trial court erred in admitting certain testimony;

II. Whether the trial court's verdict forms were improper;

III. Whether Count Four should be dismissed (Count Five of the presentment);

IV. Whether the trial court erred in excluding certain testimony;

V. Whether the trial court erred in allowing the testimony of Dr. Reardon regarding penetration; and

VI. Whether the trial court committed sentencing errors.

After a careful review of the record, we affirm the judgment of the trial court.

Summary of the Facts

Testimony at trial revealed that on June 9, 1995, the twelve-year-old victim, T.S. (we will use the initials rather than the full name of the victim), insisted on going to work with her mother. While the mother and daughter were in the car, the victim started crying and said that Defendant, the victim's stepfather, had raped her. The mother immediately notified authorities and took T.S. to the hospital emergency room to be examined.

Dr. Donald Verlin Tucker, Jr. examined T.S. at the emergency room and his examination revealed a history of sexual abuse consistent with that which she had told him. He testified that he examined the victim five days after the penile penetration had allegedly occurred. He testified that the genitalia examination was normal except for the absence of a hymen.

Dr. Peter Reardon, an obstetrician/gynecologist, took a medical history of the victim on June 14, 1995, which included her statement that she had bled for two days after penile penetration on Sunday, June 4, 1995, and had experienced two other vaginal penetrations, one digitally and one orally. Dr. Reardon discovered two small broken areas on the victim's hymen when doing a pelvic examination, but found no recent trauma to the vagina or any lacerations. Dr. Reardon said that a "recent trauma" to the hymen takes about six to eight days to heal after being torn and that after ten days it would look like a healed wound.

The victim testified at trial about various types of sexual abuse inflicted by Defendant, described the circumstances surrounding each incident of abuse, and gave approximate dates for most incidents based on where the family was living, what car the family was driving, and birthdays of family members. The time span for Defendant's sexual abuse occurred over a seven-year period beginning when T.S. was five and ending when she was 12.

T.S. testified that her family moved to the "blockhouse" when she was about five years old and that a barn was located on the property. While the family lived in the "blockhouse," Defendant took the victim to the barn to feed the cats. In the barn, Defendant placed her on stacked bales of hay, removed her panties, and fondled her. T.S. did not tell her mother about this incident before June 9, 1995, although she testified that she believed that this incident occurred in 1987.

In 1990, when the victim had finished the second grade, the family moved to a house on Snake Hollow Road. At that time, the family owned a red Thunderbird.

The victim said that she and Defendant were in the red Thunderbird traveling towards the family's prior residence, the "blockhouse," when Defendant began "playing with himself," pulled to the side of the road, and stopped the car. Defendant then walked to the passenger side of the car, removed the victim's "bottom clothes," and started rubbing her vagina and masturbating. Defendant ejaculated on T.S. and wiped the ejaculate off with his bandana handkerchief. The victim did not tell her mother about this incident before June 9, 1995, because she was afraid that Defendant might hurt her by "whipping" her. Upon objection by Defendant, the trial court instructed the jury to disregard the victim's statement about Defendant "whipping" her. Defendant moved for a mistrial based on that statement, but the trial court overruled it.

T.S. testified that while she and Defendant were riding in a red Buick car he had purchased that day, Defendant said he needed to go to his employer's garage to roll up the windows of his garbage truck. Other proof showed that the vehicle was purchased on June 29, 1992. While the victim was sitting in the Buick, she locked the car doors because she was afraid that Defendant "might try something." After Defendant told the victim to unlock the doors, he took her out of the car, laid her on a pallet, removed her panties, got on top of her, and began rubbing his penis against her. When the victim said "you promised you wouldn't do this again," Defendant told her that this was the last time.

Sometime before her brother's August 22nd birthday in an unspecified year, Defendant, the victim, and her brother were taking items to the garage at the Snake Hollow Road residence. Defendant sent the victim's brother to feed the chickens. When Defendant and T.S. were alone in the garage, Defendant rubbed her vagina,

-5-

masturbated, ejaculated, and wiped the ejaculate off her with his bandana handkerchief. T.S. stated that "this happened several times, about four or five times."

On another occasion, Defendant was standing beside the Buick with his pants unzipped and his penis exposed while the victim's mother was mowing the yard. Defendant forced T.S. to put her mouth on his penis and to perform fellatio.

During the wintertime after the year 1990, Defendant used Vaseline that was kept on the victim's mother's dresser to penetrate the victim digitally in the adults' bedroom.

On the Saturday after school ended in 1995, Defendant came into the victim's bedroom while victim was reading a book, pulled down her shorts and panties, and said he was checking to see if she had "been with any boys." Then he performed cunnilingus on her. After telling her he was going to do what he "usually" did, he rubbed her vagina, masturbated, ejaculated, and wiped the ejaculate off with his bandana handkerchief. Neither the victim's mother nor brother were at home during this incident.

On June 4, 1995, again while her mother and brother were away from the house, Defendant penetrated the victim with his penis in the victim's bedroom. Defendant told T.S. that he would kill her if she told anyone. The victim was crying and bleeding from the penetration and she continued to bleed for two days.

On June 7, 1995, Defendant, the victim, and her brother went to Kinser Park. They had been on their way to visit the children's mother at work, but learned that the mother could not get off to see them. As the victim and Defendant walked through the woods at Kinser Park looking for a place to fish, Defendant began playing with the victim's breasts through her clothes. T.S. said that she tried to get away, but Defendant told her, "If you try to get away it makes me want you more."

At the conclusion of the victim's testimony on direct examination, counsel for Defendant objected to her statement that Defendant had sexually battered her four or five times in the Snake Hollow garage. The basis for defense counsel's objection was that these were "other bad acts" not covered by the Bill of Particulars. Overruling the motion for a mistrial, the court stated that the charges could be defined specifically enough to avoid any jury confusion.

Samera Zavaro, a forensic scientist with the TBI, testified that the fitted bottom sheet from the victim's bed tested positive for blood and semen. She further testified that after DNA testing on the bed sheet, Defendant could not be excluded as the contributor of the sperm on the victim's bed sheet.

Defendant testified and denied that he had molested or had sex with his stepdaughter.

The jury found Defendant guilty of four counts of aggravated sexual battery and four counts of rape of a child. As reflected in the judgment form, the trial court changed one of the child rape convictions (Count Three) to aggravated rape because the State was not able to establish that it occurred after July 1, 1992, the

effective date of the "rape of a child" statute. See Tenn. Code Ann. § 39-13-522; State v. Case, 884 S.W.2d 146, 147 (Tenn. Crim. App. 1994).

## I. Admissibility and Effect of Certain Testimony

Defendant argues in this issue that the "State was allowed, over objection, to introduce irrelevant prejudicial uncharged conduct." Specifically, Defendant contends that the victim was allowed to testify about an incident that was time-barred by the statute of limitations. Defendant asserts that the count of the presentment charging this offense had already been dismissed. He also contests the victim's testimony that Defendant "whipped her hard" and that he sexually assaulted her "four or five times" in the garage at the Snake Hollow residence. Finally, he argues that it was improper for the victim's mother to testify that Defendant had threatened to kill her and to hurt the victim.

First, Defendant contends that the victim was allowed to testify to an allegation of aggravated sexual battery that was dismissed as being time-barred by the statute of limitations. This incident allegedly occurred in 1987 when the victim was about five years old. The victim testified that Defendant took her to the barn to feed the cats, and there he removed her panties and fondled her. First of all, Defendant has waived this claimed error on appeal because he did not enter a contemporaneous objection to the testimony. Tenn. R. App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1988). However, even if this issue is addressed, it is without merit. The record does not indicate what happened to this particular count, so we cannot say whether this count was dismissed or severed. There should be no uncertainty regarding the status of a

count of a presentment, and it should be noted that it is the responsibility of the appellant to present an adequate record for review on appeal. Regardless, this charge would not be time-barred, as Tennessee Code Annotated section 40-2-101(d) and (e) which became effective in 1985, is applicable to this charge. See Morgan v. State, 847 S.W.2d 538, 540 (Tenn. Crim. App. 1992) (citing 1985 Acts, ch. 478, § 21). This statute states that prosecution for aggravated sexual battery, among other offenses, had to commence no later than the date the child attains the age of majority or within four (4) years after the commission of the offense, whichever occurs later. Tenn. Code Ann. § 40-2-101(d). Therefore, prosecution would have had to commence in 1991 or before the victim reached the age of 18. In the instant case, commencement of prosecution for this offense occurred in 1997 at which time the victim was only 14 or 15 years old.

Second, Defendant has also waived any objection to the victim's testimony that Defendant took her to the Snake Hollow garage and sexually battered her "four or five times" because Defendant again made no contemporaneous objection to this testimony. Tenn. R. App. P. 36(a); Killebrew, 760 S.W.2d at 235. At the conclusion of the victim's testimony on direct examination, defense counsel did object to this statement and asked for a mistrial. The court said that the charges could be defined specifically enough to avoid any jury confusion. The trial court did give a jury instruction explaining the limited purpose of the evidence and explained that any evidence that Defendant had committed a crime or crimes other than those charged could not be considered to prove his disposition to commit the charged crimes. The jury is deemed to have followed the court's instruction, and we find the instruction sufficient to cure any prejudice to Defendant. See State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992).

Next, Defendant did make a contemporaneous objection to the victim's testimony that she was afraid of Defendant because he "whipped her hard." In the presence of the jury, defense counsel asked for an instruction concerning the testimony about the whipping, and the court instructed that "the jury should disregard that and not consider it for any purpose." The jury is presumed to have followed the trial court's instruction. Id. Moreover, this testimony by the witness does not "affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Accordingly, any error that occurred as a result of this victim's unsolicited statement was harmless. Tenn. R. App. P. 36(b).

Finally, Defendant states that the victim's mother should not have been allowed to testify that Defendant had threatened to kill her and/or hurt the victim. Defendant did not make a contemporaneous objection. See Tenn. R. App. 36(a). In any event, we do not find this evidence to have affected the result of this trial. Tenn. R. Crim. P. 52(a). This issue is without merit.

## II. Verdict Forms

In his second issue, Defendant claims that the trial court's verdict forms constituted improper commentary on the facts. The verdict forms submitted to the jury specified the eight charged crimes as follows:

> [Count One] after the parties moved to Snake Hollow Road (after March, 1990) and before the parties purchased a Buick automobile (June, 1992), when the defendant and the victim, [ ], were in a red Ford Thunderbird and were going to their former residence, the block house;

[Count Two] at the Snake Hollow Road residence in the summer of 1992 during daylight, in the garage;

[Count Three] by forcing [ ], the victim, to perform fellatio on [Defendant] at the home on Snake Hollow Road after June 29, 1992, the date of purchase of the Buick automobile and at the back of the Buick;

[Count Four] by the digital penetration of [the victim], which occurred in the fall of 1993 and before Thanksgiving Day in the defendant's bedroom;

[Count Five] by cunnilingus on June 3, 1995 of [the victim] in her bedroom at the Snake Hollow Road residence;

[Count Six] in her [the victim's] bedroom on Sunday, June 4, 1995;

[Count Seven] on Wednesday, June 7, 1995 at Kinser Park while [Defendant] and the victim, [ ], were walking in the woods;

[Count Eight] at the Snake Hollow Road residence between March, 1990 and June 9, 1995 and while the defendant and the victim, [ ], were test-driving the Buick (purchased on 6-28-92) and in the garage of the defendant's employer.

After reviewing the verdict forms, we find that the trial court did not offer unnecessary commentary on the facts as alleged by Defendant. Rather, the forms contain enough specific information to comply with the requirement that the State elect the particular offenses for which convictions were sought. See State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801 (Tenn. 1973). Since the victim did testify to many sexual crimes committed by Defendant, the trial court ensured unanimity in the jury's decision by being specific in the verdict forms. See Shelton, 851 S.W.2d at 137. This issue is without merit.

III. Dismissal of Count Four

In his third issue, Defendant claims that Count Four should be dismissed because the victim's testimony as to when the digital penetration occurred did not specify a year. Defendant contends that without a specific year the jury could not determine if the digital penetration was "an alleged aggravated rape or a child rape." We note that the count Defendant is contesting is Count Five in the presentment and Count Four on the verdict form and judgment.

Defendant fails to cite any authority to support his argument, and therefore this issue should be waived. See Tenn. R. App. P. 27(a)(7); State v. Dickerson, 885 S.W.2d 90, 93 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1993). However, even if this issue is addressed, it is without merit.

The count in the presentment Defendant contests alleges the following:

> [Defendant], between ___, 1992, and ___, 1993, unlawfully committed the offense of rape of a child by knowingly engaging in unlawful sexual penetration of [victim], a child less that thirteen years of age, by sticking his finger inside her vagina; a class A felony in violation of T.C.A. 39-13-522, and against the peace and dignity of the State of Tennessee.

Prior to July 1, 1992, the unlawful sexual penetration of a victim less than thirteen (13) years of age was designated as aggravated rape. Tenn. Code Ann. § 39-13-502(a)(4)(1991). That portion of the aggravated rape statute referring to victims under thirteen (13) years of age was then "moved to § 39-13-522." Sentencing Commission Comments, Tenn. Code Ann. § 39-13-502. In fairness to Defendant, panels of this Court have indicated that it was codified "as a separate, new crime" at Tenn. Code Ann. § 39-13-522. See State v. Banes, 874 S.W.2d 73, 78, n.4 (Tenn. Crim. App. 1993), perm. to appeal denied (Tenn. 1994). However, the elements of aggravated rape of a child less than 13 years of age are identical to

the elements of rape of a child.  The classification of the offense as an A felony remained the same.  <u>See</u> Tenn. Code Ann. §§ 39-13-502(b) and -522(b).  The only significant difference is that each sentence for convictions of an offense occurring on or after July 1, 1992, must be served undiminished by sentencing credits.  <u>See</u> Tenn. Code Ann. § 39-13-523.  The undiminished sentencing provision of rape of a child requires a showing that the penetration occurred on or after July 1, 1992, before one can be convicted of the offense designated as rape of a child.  If there is insufficient proof that the offense occurred on or after July 1, 1992, one could only be convicted of aggravated rape. This situation is akin to one where a sentence for a specified crime increases after a certain date.  Under such circumstances, a person must be sentenced within the parameters of the sentence existing at the time of the *offense*, not the time of *sentencing.*

At trial, the victim's testimony did not specify when the offense occurred. Testimony in regards to this count was as follows:

> State: I've asked the court officer to pass to you Exhibit #16.  Would you look at that, please? Do you recognize that?
>
> Victim: Yes.
>
> State: Where was that jar of Vaseline kept?
>
> Victim: On my mother's dresser.
>
> . . .
>
> State: Did you ever have occasion to be in [Defendant's] bedroom?
>
> Victim: Yes.
>
> State: Did you ever have occasion to . . . . excuse me, let me ask the question this way.  On an occasion that you were in his bedroom did it involve Exhibit #16, that jar of Vaseline?

Victim: Yes.

State: Do you remember when that occurred?

Victim: I know it was in the winter.

State: Do you know whether or not it was before or after Thanksgiving Day?

Victim: I believe it was before.

State: Do you know what year it was?

Victim: I cannot recall.

State: Was it there at the Snake Hollow Road residence?

Victim: Yes.

State: [D]o you remember whether it was before or after the purchase of the Buick?

Victim: I don't recall.

State: Would you tell the ladies and gentlemen of the jury what happened on the occasion involving the jar of Vaseline?

Victim: It was in his bedroom and my mother's room and [Defendant] had took [sic] the jar of Vaseline and put it on his finger and pulled my pants down and he stuck his finger in my vagina and I told him that it hurt me. He pulled his finger back out and told me to get up.

State: Did you tell your mother about that?

Victim: No, I did not.

The foregoing testimony demonstrates that the State did not establish the exact date that this particular incident occurred. The only time frame the victim could testify to was that it occurred after they moved to the Snake Hollow residence which was earlier established as being sometime in the year 1990. The count in the presentment dealing with the digital rape states that Defendant stuck his finger

-14-

inside the victim's vagina "between ___, 1992, and ___, 1993." The Bill of Particulars states that the single incident of digital penetration occurred before Thanksgiving Day of 1993. However, contrary to the State's argument, this is not enough to satisfy the State's burden of proving that the incident occurred after July 1, 1992, in order to establish rape of a child. These documents were not admitted into evidence and it was the State's burden to clearly establish through evidence at trial when the alleged incident occurred.

However, to dismiss this count altogether would be an extreme misplacement of form over substance. The act of "unlawful sexual penetration of a victim" who "is less than thirteen (13) years of age," did not cease being a crime at midnight on June 30, 1992; it merely ceased being codified at Tenn. Code Ann. § 39-13-502. See Tenn. Code Ann. § 39-13-522(a). Again, the elements of aggravated rape and rape of a child are the same and the State did prove beyond a reasonable doubt Defendant's guilt of the unlawful sexual penetration of a child less than thirteen years of age. However, since the State did not clearly establish when the incident occurred, we hold that Defendant is guilty of aggravated rape instead of rape of a child in Count Four (Count Five of the presentment). The judgment must be modified accordingly.

## IV. Excluded Testimony

In this issue, Defendant contends that he was prevented from presenting a defense when the trial court excluded testimony that the victim had contact with "sex toys," that she appeared to engage in sexual conduct with her brother, that her

brother had raped a cousin, and that she had knowledge of the male anatomy and physiology.

––––––

Evidence of a victim's sexual behavior other than the sexual act or acts at issue is governed by Tennessee Rule of Evidence 412. Rule 412 does apply to cases involving the rape of a child. See State v. Terrell Dion Cowans, C.C.A. No. 02C01-9610-CC-00359, Henry County (Tenn. Crim. App., Jackson, Nov. 20, 1997), perm. to appeal denied (Tenn. 1998). The rule limits the admissibility of evidence of specific acts of sexual conduct of the victim, as well as evidence of the victim's sexual reputation.

At issue is the provision which may permit the admission of sexual behavior of the victim with persons other than Defendant "to prove or explain the source of semen, injury, disease, or knowledge of sexual matters." Tenn. R. Evid. 412(c)(4)(ii). "Knowledge of sexual matters" is often sought to be introduced in child sexual abuse cases. Where the State's proof suggests that the child victim's knowledge of sexual matters resulted solely from the incident with the defendant, the defendant is permitted to show that the victim acquired the familiarity from sexual activity with third persons. Advisory Commission Comments, Tenn. R. Evid. 412.

However, before evidence regarding a victim's "knowledge of sexual matters" is admissible, the trial court must first determine that the probative value of the evidence outweighs its unfair prejudice to the victim. Tenn. R. Evid. 412(d)(4). In holding that the evidence was inadmissible, the court stated the following:

> None of that is admissible except . . . I guess maybe
> unless I should have said, specific instances of conduct.
> So what you have to first have is a specific instance of a

victim's sexual behavior, is it admissible unless submitted in accordance with such and such?

Consent is not an issue. If it were someone other than the accused it can only be used to rebut or explain scientific or medical evidence which is not the case. To prove or explain the source of semen, injury, disease or knowledge of sexual matters, which is not the case. Or to prove consent, which is not an issue.

. . .

Somebody playing with . . . I don't think playing with a vibrator would ever be admissible, that I can conceive. Seeing someone attempting to have sex would not be admissible.

The only evidence that I have ever seen that could come in and I think if you read all of 412 it's clear, is . . . have you read the definition of sexual behavior? It means sexual activity of the alleged victim other than the sexual act that's the issue in the case. Sexual activity is defined, isn't it? Let's look at it.

The definition of sexual behavior is sexual activity of someone other than the defendant, and to be admissible it has to be a specific instance of a victim of sexual behavior for the purpose of proving consent which is not an issue, medical evidence which is not an issue, behavior of the accused which is not an issue . . . .

The only thing I've seen a court let in are where one said, 'Yes, I had consensual sex with her,' and then you've got to remember it says . . . for knowledge of sexual, the fact that someone may have attempted to have sex with the victim or the victim may have played with a so-called, quote, sex toy, does not impute knowledge of copulation. I don't believe any court would stretch it that far.

. . .

I just don't believe under any stretch of the imagination that any court would ever allow those submissions to come in under Rule 412.

By comments the trial court made in holding the evidence inadmissible, it is apparent that the court below found the incidents had no probative value. We agree with the trial court's conclusion. A decision regarding Rule 412 will not be

-17-

overturned absent a showing that the determination was an abuse of the trial court's discretion. See State v. Sheline, 955 S.W.2d 42, 46 (Tenn. 1997). Defendant has failed to show how denying the evidence was an abuse of the trial court's discretion. This issue is without merit.

_____

### V. Admissibility of Dr. Reardon's Testimony

In this issue, Defendant argues that the trial court erred in allowing Dr. Reardon to testify as to his impression concerning penetration and in allowing the introduction of Exhibit 30 which was Dr. Reardon's complete examination of the victim.

Defendant fails to cite any authority in support of this issue and it should therefore be treated as waived. Tenn. R. App. P. 27(a)(7); Dickerson, 885 S.W.2d at 92-93; see also Killebrew, 760 S.W.2d at 231-32. In addition, the record reveals that Defendant did not make a contemporaneous objection to the testimony of Dr. Reardon or any objection to the admission of Exhibit 30 and this issue should be waived for these reasons as well. Tenn. R. App. P. 36(a).

Defendant's motion in limine requested, in pertinent part, that the trial court redact "[a]ny oral statement made by the child in this case to physicians that is [sic]

not for purposes of diagnosis and treatment." It should be noted that the record contains no Order disposing of this motion.

However, even addressed on the merits, Defendant's argument must fail. On direct examination, Dr. Reardon testified that he took a medical history from the victim, that the history was important for purposes of diagnosis and treatment, and that the victim had told him of three specific incidents of penetration. Dr. Reardon said that his physical examination led him to conclude that partial penetration by a male penis of the victim was possible and was consistent with the history that the victim gave him. This issue is without merit.

## VI. Sentencing

In this issue, Defendant argues that the court erred in finding three enhancement factors, finding no mitigating factors, and in ordering the sentences on the four rape convictions to be served consecutively.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this Court must consider the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments of counsel relative to sentencing alternatives, the nature of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. § 40-35-210; State v. Parker, 932 S.W.2d 945, 955-56 (Tenn. Crim App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court considered the proper sentencing principles and stated its reasons and findings on the record. Therefore, review by this court is de novo with a presumption of correctness. However, even though trial court considered the proper sentencing principles, we hold, as specified below, that the court erroneously applied two enhancement factors and failed to consider one mitigating factor.

A. Length of Sentences

The trial court found that three enhancement factors were applicable to all offenses for which Defendant had been convicted:

> (a) The personal injuries inflicted upon the victim were particularly great;
>
> (b) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; and

(c) The defendant abused a position of private trust.

See Tenn. Code Ann. § 40-35-114(6), (7) and (15).

In applying enhancement factor (6), the trial court stated the following:

> Now, we've had no evidence in the case from psychologists or psychiatrists about the consequences of the defendant's criminal acts upon her, although she was very young, and the evidence was that the defendant's abuse of her sexually began at age five. But I did observe her demeanor while she was testifying and she was very distraught throughout her testimony, she cried and sobbed almost throughout her testimony. Certainly the observation this Court would make, in looking at her as compared with other victims of similar age who have testified in this court in other cases over a period of time, is that she obviously suffers greatly from the things that have been done to her and I think that #6 is, in fact, an enhancement factor in the case.

The term "personal injury" as used in enhancement factor (6) is broad enough to embrace the emotional injuries and psychological scarring sustained by the victim of a sexual offense. See e.g., State v. Melvin, 913 S.W.2d 195, 203 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1995); State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1994). However, before this factor may be used to enhance a sentence within the appropriate range, the State must establish that the emotional injuries and psychological scarring are "particularly great." Tenn. Code Ann. § 40-35-114(6); see State v. Lorenzo Puente Salazar, C.C.A. No. 02-C-01-9105-CR-00098, Shelby County (Tenn. Crim. App., Jackson, Jan. 15, 1992). In Salazar, this Court held the following:

> Clearly, rape is injurious *per se* to the body and mind of the victim. In this regard, the legislature has seen fit to enhance the offense to aggravated rape if a child is involved. In consideration of this automatic enhancement, it is questionable that a trial court is entitled to rely solely upon the age of the victim as a basis to find that the

> mental trauma is 'particularly great.' Further, the record is totally devoid of any evidence from which the trial court could determine that the mental disturbance shown in the record was greater than, less than, or equivalent to that which is ordinarily involved with this serious offense.

Id. at 7-8.

The Tennessee Supreme Court in State v. Kissinger, 922 S.W.2d 482, 487-88 (Tenn. 1996), looked for medical or psychological proof to determine if the victim's injuries were "particularly great." Finding none, the court determined that application of enhancement factor (6) was inappropriate.

In the instant case, the State did not present any evidence as to the child's psychological injuries. No psychiatrists or psychologists testified as to any emotional scarring the victim had suffered, and no evidence was presented that the victim required counseling for her emotional injuries. But see contra, State v. John Claude Wells, III, C.C.A. No. 01-C-01-9505-CR-00146, Davidson County (Tenn. Crim. App., Nashville, June 6, 1997), perm. to appeal denied (Tenn. 1998); State v. Robert J. Burton, Sr., C.C.A. No. 02C01-9507-CC-00193, Weakley County (Tenn. Crim. App., Jackson, June 10, 1996), perm. to appeal denied (Tenn. 1996). The evidence of physical injury to the victim in this case was a partial tear to her hymen and her testimony that she bled for two days following penetration. But see contra, State v. James Lloyd Julian, II, C.C.A. No. 03C01-9511-CV-00371, Loudon County (Tenn. Crim. App., Knoxville, July 24, 1997), perm. to appeal denied (Tenn. 1998); State v. Roy L. Sherrod, C.C.A. No. 02-C-01-9510-CR-00331, Shelby County (Tenn. Crim. App., Jackson, July 26, 1996), perm. to appeal denied (Tenn. 1997). Accordingly, we find that although the victim certainly suffered injuries, those injuries were not

"particularly great" as contemplated by the statute for enhancement purposes. Therefore, enhancement factor (6) should not have been applied to any of the convictions.

Relative to enhancement factor (7), Defendant argues that there is nothing in the record to show that he committed the offenses to gratify his desire for pleasure or excitement. See Tenn. Code Ann. § 40-35-114(7). In applying this factor to the convictions, the trial court stated the following:

> The character of rape has many faces. It can be one of oppression, of male dominance, of punishment, or it can be for pleasure and excitement. I think the evidence in this case clearly show that it was to gratify the defendant's desire for pleasure or excitement, and I think that distinguishes this case in an enhancement way, and so I believe that is a valid enhancement consideration.

Initially, we note that a necessary element of aggravated sexual battery as charged is sexual contact which is defined as the intentional touching of an intimate part or the clothing over such intimate part "for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6); see Kissinger, 922 S.W.2d at 489-90 (Tenn. 1996). Because a factor cannot be applied if it is also an essential element of the offense as charged in the indictment, enhancement factor (7) is inapplicable to the four aggravated sexual battery convictions.

However, factor (7) is not an essential element of aggravated rape or rape of a child and may be considered as an appropriate enhancement factor. See State v. Adams, 864 S.W.2d 31, 34-35 (Tenn. 1993). In Kissinger, our supreme court recognized the difficulties in establishing factor (7):

> Enhancement factor (7), unlike most of the other sentencing factors, calls into question a defendant's reasons for committing a crime. Human motivation is a

-23-

tangled web, always complex and multifaceted. To prove defendant's motives will always be a difficult task. But the legislature, in its wisdom, has placed that obligation on the state when the state seeks an enhanced sentence.

922 S.W.2d at 491.

We are of the opinion that the State met its burden of proof in this case that the rape was sexually motivated to gratify Defendant's desire for pleasure or excitement. There were several instances of sexual conduct by Defendant with the victim occurring on different occasions. Defendant penetrated the victim by inserting his penis in the victim's vagina, the victim performed fellatio on Defendant, and Defendant performed cunnilingus on the victim. The victim testified as follows about one incident:

> [Defendant] pulled down my shorts and panties and he told me that he had to check and see if I had been with any boys. Then he stuck his tongue in my vagina.
>
> . . .
>
> [A]fter he got done he told me, he said, 'No, you haven't been with any boys,' and then he said, '[victim], I'm going to do what I usually do,' and then he started rubbing my vagina and masturbating and then he ejaculated on me and then he wiped it off with a handkerchief.

In regards to the incident of penile penetration, the victim testified that she asked the victim to stop and he asked her, "Do you want me to hurry up and get done," and she told him that she did.

Although orgasm is insufficient, in and of itself, to establish that Defendant committed rape to gratify his desire for pleasure or excitement, when that fact is viewed along with other circumstances in the case, we find this factor to be appropriate. See Kissinger, 922 S.W.2d at 490-91. Despite Defendant's denial that he committed the offenses, the evidence supports the application of factor (7) by a

preponderance of the evidence. See State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1995) (preponderance of the evidence standard applies to factual determinations necessary for enhancement factor). Furthermore, the jury concluded beyond a reasonable doubt that the defendant's intentional touching was for the purpose of sexual arousal or gratification to convict the defendant of four counts of aggravated sexual battery. Under these circumstances, we hold that the record supports the application of factor (7) in sentencing Defendant for the aggravated rape and rape of a child convictions.

The court also found as an enhancement factor the Defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(15). We note that Defendant does not specifically contest the application of this factor on appeal. We believe this enhancement factor clearly applies, and obviously the trial court gave it great weight. Defendant's status as stepfather while living with the victim's mother is a sufficient basis for sentence enhancement under factor (15). Adams, 864 S.W.2d at 34. A more serious violation of private trust is hard to imagine. Accordingly, we find that this enhancement factor appropriate for all convictions.

In conclusion, we find that enhancement factor (6) is inapplicable to all eight convictions, enhancement factor (7) is only applicable to the four rape convictions, and enhancement factor (15) is applicable to all eight convictions.

With respect to mitigation, Defendant merely mentions that a few mitigating factors should have been applied which include no prior criminal record, his employment record, his limited education, and his financial assistance to his family. The pre-sentence report reveals that a search was conducted for prior criminal

-25-

offenses in Greene County and none were found. We find the absence of a criminal record to be applicable in mitigation, although little weight should be afforded it. This Court has also held that where Defendant was convicted of sex offenses involving minors, favorable consideration based upon his family contributions and work ethic was not appropriate. See State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994), perm. to appeal denied (Tenn. 1995). Further, we find no evidence in the record as to how his limited education affected his actions against his stepdaughter in this case, so this factor will not be applied.

In summary, we believe one mitigating factor, Defendant's lack of a prior criminal record, should be considered relative to the length of the sentences imposed. See Tenn. Code Ann. § 40-35-113(13). However, although this factor should be considered, we do not believe it is entitled to significant weight in the context of this case.

Even though the trial court inappropriately applied one enhancement factor as to the aggravated sexual battery convictions and one enhancement factor as to all convictions and failed to apply one mitigating factor, we find that the proof supports a twelve (12) year sentence for each aggravated sexual battery conviction and a twenty-five (25) year sentence for each aggravated rape and rape of a child conviction. Defendant is not entitled to a reduction in sentence merely because we conclude on appeal that the trial court incorrectly applied sentencing and mitigating factors. State v. Hayes, 899 S.W.2d 175 S.W.2d 175, 186-87 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1995).

In Hayes, a panel of this Court stated the following:

> [E]ven if we determine that fewer factors should apply than used by the trial court, this does not mean that the length of the sentence is automatically reduced. That is, if the same degree of culpability and negative circumstances relate to the remaining applicable factors, the original enhancement may still be appropriate.

Id. Such is the case here. The defendant was charged with the care and control of the victim, yet he abused that position of trust. We find the length of the sentences imposed by the trial court to be appropriate.

B. Consecutive Sentences

Next, the defendant contends that the trial court erroneously imposed consecutive sentences. In imposing consecutive sentences to the aggravated rape and rape of a child convictions, the court stated the following:

> The defendant qualifies for consecutive sentencing under Tennessee Code Annotated [section] 40-35-115 which was in effect when all of these offenses are charged, and it says this, that the defendant can be sentenced to consecutive sentences for convictions if the defendant is convicted of two or more, and here it's eight statutory offenses involving sexual abuse of a minor, with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims since she was five, time span of defendant's undetected sexual activity, the nature and scope of the sexual acts pervasive and extent of residual, physical and mental damage to the victim which seems significant. In addition to that the child rape statue now would bolster that.
>
> . . .
>
> The right thing for the right reasons seems to me to be this, that this defendant, for the things that he's done to this child over a long period of time, should not be in a position to be released from custody. That's harsh, that's hard for me, but I think it's the truth . . . .

In this case, Defendant was convicted of a total of eight offenses involving sexual abuse of his stepdaughter. Defendant's conduct occurred over a long period of time and the nature and scope of the defendant's sexual acts were extensive. Although we did not find there to be "particularly great" injury to the victim, we certainly believe that there was enough physical and emotional damage to justify the application of Tenn. Code Ann. § 40-35-115(b)(5). However, a finding of Tenn. Code Ann. § 40-35-115(5) does not end our inquiry into the validity of consecutive sentencing. Instead, Tenn. Code Ann. § 40-35-115 requires further review of whether consecutive sentences are necessary to protect the public from the defendant's possible future criminal conduct and whether the aggregate sentence is reasonably related to the severity of the defendant's present offenses. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-115; Tenn. R. Crim. P. 32(c)(1); see also State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). From our de novo review of the record, we conclude that the trial court did not err in imposing consecutive sentences. The trial court found that the confinement was necessary to protect the public and the victim from future criminal conduct of Defendant. Furthermore, because the progressive egregious nature of Defendant's eight convictions occurred over a significant span of time with his own stepdaughter, the consecutive sentences are reasonably related to the severity of the crimes. Defendant has failed to carry his burden to show that the trial court's sentence was improper. This issue is without merit.

Conclusion

-28-

The judgment of Count Four is modified to reflect a conviction of aggravated rape rather than rape of a child. In all other aspects, the judgments are affirmed.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
DAVID H. WELLES, Judge