Denver D. BURLISON, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Nov. 19, 1973.

Thomas E. Fox, Franklin, for petitioner.

David M. Pack, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Justice.

For convenience, the parties will be designated as in the trial court; that is, the respondent, State of Tennessee, as State, and the petitioner, Denver D. Burlison, as defendant.

Defendant was tried upon an indictment returned by the Grand Jury of Davidson County, charging carnal knowledge of a female child under the age of twelve years, in violation of T.C.A. § 39–3705.

The jury found defendant guilty and punishment was set at confinement in the State Penitentiary for a period of ninety-nine years and one day. The Court of Criminal Appeals affirmed the conviction. We granted certiorari and the case has been argued.

The prosecutrix in this case, Nannie Mae Burlison, known in the testimony as Nancy Burlison, the injured female, was the step-daughter of defendant. He married her mother, Sara Burlison, when Nancy was about five years old. Nancy had a brother, Homer, one year younger than she was, and defendant and Sara Burlison had one child of their own. Defendant adopted Nancy and Homer. The five of them lived together as a family until Sara was killed, as a result of gunshot wounds

caused by defendant, on or about September 4, 1969, when Nancy was eleven years old (in a prior trial unrelated to this case, defendant was convicted of involuntary manslaughter in connection with the death of his wife). It was Nancy's testimony that defendant began sexually fondling her when she was six years old and that when she was about eight years old, defendant began to have actual intercourse with her. Nancy recalled that these acts occurred several times, with the last act being about a week before her mother's death. About three months after her mother's death, she told her maternal grandmother about the acts charged against defendant. An investigation and indictment followed. Defendant denied all of the offenses charged against him by Nancy. It was his contention that the charges were motivated by Nancy's hatred of him for shooting her mother and his refusal to agree to the adoption of Nancy and Homer by their real father's parents.

The view we take of this case renders it unnecessary that we consider defendant's first assignment of error, challenging the sufficiency of the evidence. We pretermit that assignment and pass directly to the following contention of defendant:

"The trial judge did not instruct the jury that they must decide upon the particular offense the defendant was guilty of, if any."

The indictment charges that defendant, ". . . on divers days between the summer of 1964 and August, 1969 . . . did carnally know and abuse one 'Nannie Mae Burlison' . . . ." The proof did not show any particular date and the trial court did not instruct the jury that they must decide upon the particular offense defendant was guilty of, if any.

In Jamison v. State, 117 Tenn. 58, 94 S. W. 675 (1906), the indictment on which defendant was tried, charged that on a specific date he had carnal knowledge of a female over twelve and under eighteen years

of age. The State introduced proof of several acts of carnal knowledge between defendant and the prosecutrix, three of said acts being particularly specified. At the close of the testimony, defendant moved the court to require the State to elect upon which one of these offenses it would ask for a conviction. The trial court overruled the motion. On appeal, this Court reversed. In response to the argument of the State that violation of the age of consent law is a continuous offense, the Court held that each unlawful act of carnal knowledge is a separate substantive offense; that in a prosecution for one violation of the statute, evidence of other acts of illicit intercourse between the same parties is competent, as tending to establish the commission of the special act under examination, as corroborative of the evidence of witnesses testifying thereto, and for the purpose of showing the relation of the parties. But, the Court held that the State could be required to elect the specific offense upon which a verdict of guilty would be demanded, for three fundamental reasons. First, to enable the defendant to prepare for and make his defense to the specific charge; second, to protect him from double jeopardy by individualization of the issue, and third, so that the jury's verdict may not be a matter of choice between offenses, some jurors convicting on one offense and others, another.

In Vinson v. State, 140 Tenn. 70, 203 S. W. 338 (1918), the indictment charged the defendant with violating the age of consent in the month of September. The proof showed the commission of three acts, one in July, one in September, and one in December. After all the evidence was in, and the State had concluded its opening argument, defendant moved that the State be required to make an election between the acts proved as to the one upon which it sought conviction. The trial court held that the motion came too late. On appeal, this Court reversed. In an opinion by Mr. Justice Green, the Court said:

"The defendant is entitled to require the election before he introduces any proof so that he can meet by his proof the evidence upon which the State relies . . . . The state can make a voluntary election as soon as its proof is in, and the prosecuting attorney will thus be relieved of any embarrassment and enabled to concentrate his efforts . . . . The error committed immediately touched constitutional rights of the defendant, and he is therefore entitled to a new trial."

In Cox v. State, 196 Tenn. 624, 270 S. W.2d 182 (1954), the indictment charged that the defendant committed the offense of lewdness, "on the 5th day of January, 1954, and on divers other occasions before the finding of this indictment." At the beginning of the trial, the defendant moved the Court to require the State "to specify beforehand on which offense they are proceeding in this trial." The trial judge overruled the motion. In an opinion by Chief Justice Neil, the Court held that, while the State could not be required to make that election prior to the introduction of its proof-in-chief, the trial court should have sustained defendant's motion at the conclusion of the State's proof-in-chief. The Court relied upon the decision in Jamison v. State and Vinson v. State, supra, emphasizing the fact that this requirement touches the constitutional rights of the defendant for the three reasons given in *Jamison*. The Court observed that there is no embarrassment to the State in requiring the election at the conclusion of its proof-in-chief and that the jury will then know for which offense the State seeks a conviction, and will all vote upon guilt or innocence for that particular offense.

But, in the instant case, as insisted by the State, the defendant failed to move the court, during the course of the trial, to require the State to make this election.

Defendant insists that it is the duty of the trial court to instruct the jury in all

matters fundamental to the defense or put in issue by the evidence, whether or not requested by the defense.

In Webb v. State, 140 Tenn. 205, 203 S. W. 955 (1918), the Supreme Court held, for the first time, that where the only incriminating evidence against the accused was circumstantial, no request was necessary to require that the trial judge instruct the jury upon the nature of circumstantial evidence and upon the rules of law governing it. As precedent, the Court relied on the analogy found in cases involving failure to charge on reasonable doubt, theretofore held to be reversible error, even without request.

In Poe v. State, 212 Tenn. 413, 370 S. W.2d 488 (1962), the Court had under consideration whether or not the failure of the trial judge to give any instruction on the issue of alibi, without request, was reversible error. In the course of the opinion, the Court observes as follows:

"The general principle in criminal cases is that there is a duty upon the Trial Judge to give the jury a complete charge on the law applicable to the facts of the case. The defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the Judge . . . .

We think this case is governed by the principle applied in those cases where it was held the duty of the Trial Judge, without request, to give the jury proper instructions upon issues fundamental to the defense and essential to a fair trial, such as identity, reasonable doubt, dying declaration, and circumstantial evidence where it is the only incriminating evidence."

■ The necessity of requiring the State to make an election of the particular offense it will rely on for conviction, in a case such as we have under consideration, is equally fundamental, immediately touching the constitutional rights of an accused, and should not depend upon his demand therefor.

■ We hold that it was the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense.

■ In July, 1970, the defendant filed a written motion to quash the indictment on the grounds that the date alleged in the indictment was not specific, that the defendant could be put in second jeopardy, though acquitted, and that defendant could not adequately prepare a defense by way of alibi. The trial court overruled the motion, and that action was a ground of defendant's motion for a new trial. The trial court did not commit error in overruling the motion to quash the indictment. Under prior holdings of this Court, the indictment was not defective on its face. See Green v. State, 176 Tenn. 449, 143 S.W.2d 713 (1940), and Bosley v. State, 218 Tenn. 134, 401 S.W.2d 770 (1966). However, defendant's motion to quash should have focused the attention of the trial judge and the State upon the issue of the necessity of an election of a particular offense at the appropriate time. While defense counsel may be said to be remiss in failing to move for an election at the close of the State's proof, the defendant's right, in this instance, cannot be prejudiced thereby.

■ Defendant contends that the trial court committed error in ruling upon the State's request for permission to ask three witnesses a single question of whether or not they had a conversation with Nancy Burlison concerning her relationship with her father, when it was admitted by the State that the testimony of the three witnesses was inadmissible under the holding in Curtis v. State, 167 Tenn. 427, 70 S.W. 2d 363 (1932). Said ruling resulted in a stipulation that was presented to the jury.

We quote from page 116 of the record the application to the court by the District Attorney that initiated this matter:

"I might save time by stating to the Court what I intend to do with these witnesses. I intend to call three witnesses, may it please the Court, that are able to relate a conversation which they had with Nancy Burlison. However, I have to concede that not one of the three witnesses is aware of the length of time between the time of the alleged act and the time that she made the statement. Under the Curtis case, Judge Leathers ruled, he excluded that testimony in the prior trial on the ground that we were not able to establish with sufficient definiteness the length of time between the actual act itself and the time that she made the complaint. That was the problem with it, and it still exists. Here is what I propose to ask, and I will let Your Honor rule on this.

I propose, and I am not going to ask them, and I will specifically warn every one of these witnesses, that they are not to say what this young girl told them.

All I propose to ask is whether or not they had a conversation with Nancy Burlison concerning her relationship with her father, period."

This request, made out of the presence of the jury, was followed by a lengthy colloquy between the court and counsel for the State and defendant. The substance of the State's position was that failure to call the three witnesses would result in an unfavorable inference to the State's case; that the State did not offer this evidence for the purpose of showing that it was true, but solely for the purpose of showing it did happen; that the defense would undoubtedly argue that she had never told anybody about said relationship. The court eventually agreed with the State that the witnesses could be asked if they had had a conversation with Nancy Burlison about her relation with her father. Whereupon, the District Attorney proposed

that, to save time, he would simply make a statement to the jury that if each of the three witnesses were called, they would state that they had a conversation with Nancy Burlison concerning her relationship with her father.

Defendant, without waiving objection to permitting any testimony by the witnesses, agreed to a stipulation in lieu of calling each of the three witnesses. The Court of Criminal Appeals was of the opinion that while this was error, it was harmless under our statute. We agree that it was error. Whether, standing alone, it would be reversible error, we need not determine. Upon admission by the State that the testimony of the witnesses was inadmissible under Curtis v. State, supra, the trial judge should have put an end to that controversy by entirely excluding the testimony of said three witnesses. Who can say that the stipulation was not construed by the jury to be a recognition by the trial judge, the State, and the defendant, that "hue and cry" was, in fact, made within all the requirements of the law. The stipulation had unmistakable implications prejudicial to defendant's rights, circumvented the rule in Curtis v. State, supra, and should not have been permitted.

█  Error is assigned that the State's cross-examination of defendant about his conviction of involuntary manslaughter went far beyond legitimate bounds.

The Court of Criminal Appeals correctly observed that defendant was asked, in his direct testimony, about his conviction of involuntary manslaughter and the shooting of his wife, and he testified that at the time of his wife's death, he was shooting at the man with whom she was having an affair and she stepped in front of him. The issue presented is whether or not the form of the questions exceeded the bounds of advocacy and propriety, rather than the scope of the cross-examination. Examples of such questions follow:

"Q. Is it a fact, Mr. Burlison, that the execution of Sara Burlison was one of

the best planned crimes that has ever been committed in this County?

Q. Do you know of a cheaper way to take a human life than the way you did?

Q. It never occurred to you, Mr. Burlison, that you could get by with killing a woman if you found out she was running around with somebody?

Q. Mr. Burlison, do you deny that your wife, two weeks before you shot and killed her, had confronted you with this dirty thing?

Q. And at that time you said, 'I am never going to be divorced again,' and that was just two weeks before you killed her?"

Said questions and others of the same import convey the implication that defendant was, in fact, guilty of premeditated murder and, for that reason alone, exceed the permissible bounds of advocacy.

◼ Defendant also assigns as error that throughout the State's cross-examination of defendant, the District Attorney asked questions which assumed facts not in evidence. Examples of questions in this category follow:

"Q. Do you deny that Woody Butler's mother even knew about this from other sources and told your wife Sara about it and she finally believed it, and that was just two weeks before you shot and man-slaughtered her?

Q. Two weeks before you actually shot this child's mother down, Sara Burlison confronted you with the fact that you were having sexual intercourse with this child?

Q. As a matter of fact, Mr. Burlison, there were six allegations of facts made

against you when you were fired from the Orlando Police and these were not lies and you were a party to those proceedings?

Q. The fact of the matter is, Mr. Burlison, that you were accused of cheating at calling bingo?"

◼ The problem confronting this Court in dealing with the errors committed in the cross-examination of defendant is compounded by the failure of defense counsel to timely object and the failure of the trial judge to exercise any significant restraint. We are not unaware that the State is entitled to advocacy, as well as the defendant. However, the ultimate responsibility for restraint of excesses of advocacy is upon the trial judge.

We quote the following from 21 Am. Jur.2d, Criminal Law, § 234, p. 272:

"Every person charged with crime has an absolute and fundamental right to a fair and impartial trial, and the duty rests upon the courts, and also on the prosecuting attorney, to see that this right is upheld and sustained. Such right also applies whether the crime charged is felony or misdemeanor. The right also applies whether an accused is innocent or guilty, and is in no degree impaired or diminished by the strength or compelling character of the evidence against him. A denial of fair trial may constitute a denial of due process of law."

Again, it is unnecessary for this Court to determine whether, standing alone, errors committed in the cross-examination of defendant would be reversible. We are entitled to and do assume that these errors will not be repeated on the retrial of this case.

The judgments of the Court of Criminal Appeals and the trial court are reversed for failure of the trial judge to require the State to make an election of a particular

offense, and the case is remanded for a new trial.

DYER, C. J., CHATTIN and Mc-CANLESS, JJ., and LEECH, Special Justice, concur.