# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 11, 2004

## STATE OF TENNESSEE v. HUBERT E. NARD

### Direct Appeal from the Circuit Court for Franklin County
#### No. 14644     J. Curtis Smith, Judge

---

### No. M2003-02294-CCA-R3-CD - Filed June 17, 2004

---

The defendant, in this appeal of right, challenges the sufficiency of the evidence to support his convictions for driving under the influence (DUI) and disorderly conduct. After a careful review of the record, we affirm both convictions. The disorderly conduct conviction is remanded for modification of judgment to conform to the statutory maximum sentence.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Remanded for Modification of Judgment

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Hubert E. Nard.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Hubert E. Nard, was indicted for driving under the influence (DUI), violation of implied consent, reckless driving, and disorderly conduct. The defendant was tried on the DUI and disorderly conduct charges, and a jury returned guilty verdicts on both.

The defendant was sentenced to eleven months, twenty-nine days probation with the exception of ten weekends of service in the county jail and a fine of $350 on the DUI and to ten concurrent weekends with thirty days probation and a fine of $50 on the disorderly conduct charge. The defendant appeals both convictions on the grounds that the evidence does not support the verdicts of guilty beyond a reasonable doubt.

Matthew Baker, a Cowan police officer, assisted fellow officer, Clayton Williams, in a traffic stop of the defendant. The stop occurred on March 24, 2002, at Linda's Market, next door to the Cowan City Hall. Baker approached the defendant, detected an odor of alcohol, and noticed the defendant was wearing what Baker described as pajamas. The defendant admitted to having consumed alcohol. Baker was coming off his duty shift and offered the defendant a ride home. The defendant responded that he was not intoxicated but that as a taxpayer in Cowan, he could drive there intoxicated. The defendant was asked to perform sobriety tests by the officer. The defendant first performed the one-leg standing test and was next asked to do a heel-to-toe test. Baker stated that the defendant became argumentative and uncooperative and began rolling on the ground. Baker considered the defendant's actions as threatening and thought the defendant had performed poorly on the field sobriety test. A video of the defendant's field sobriety tests was shown to the jury but was not included in the appellate record. It is the duty of the accused to provide a record which conveys a fair, accurate, and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); see State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). The defendant was then handcuffed and arrested and agreed to take a blood alcohol test. The defendant had originally been stopped only for the speeding offense.

Clayton Williams was the Cowan officer who initiated the traffic stop of the defendant for driving fifty-three miles per hour in a thirty miles per hour zone. The officer noticed an odor of alcohol on the defendant, and the defendant admitted he had been drinking. Williams said that the defendant asked if the officers wanted him to act like a monkey, do back flips, and roll on the ground. The defendant then began rolling on the ground. The officer considered the defendant's actions as threatening. After the defendant requested a blood alcohol screening, Williams transported him to the hospital emergency room. He stated that on the trip, the defendant was loud and belligerent but was not violent or destructive.

At the hospital, Williams attempted to read the defendant the implied consent form but was interrupted by the defendant who stated he was not signing anything but demanded the blood test. Faced with the defendant's refusal to sign the form, the blood was not taken and the defendant was escorted out of the building. Outside the hospital, the defendant slumped slowly to the ground and began exhibiting signs of seizure activity. A doctor and a nurse responded. The doctor observed the defendant and stated that the defendant was faking the seizure. The defendant was then taken to the jail for booking. There the defendant signed a citation but refused to sign the implied consent form. Williams opined that, based on the odor of alcohol and the defendant's behavior, the defendant was intoxicated.

On cross-examination, the officer affirmed that the defendant was willing to take the blood test but would not sign the implied consent form and, as a result, the test was not administered. The officer observed no driving violation other than speeding and found no evidence of alcohol in the defendant's vehicle.

Christy Brown was the charge nurse on duty at the emergency room when the defendant was presented there. She described the defendant as reeking of alcohol and having slurred speech and

bloodshot, glassy eyes. At one point she said that the defendant, without explanation, became aggressive toward her, and the security guard stepped between her and the defendant. Brown and the doctor on duty were summoned outside when the defendant was being escorted away. The defendant was "flailing" and "jerking" on the ground. The doctor, after observing the defendant, told the defendant that he was not having a seizure. The defendant responded, "Yes, I am," but eventually stopped his activity and was escorted away by the officer.

Joe Metcalf was the security guard present when the defendant was at the emergency room. He described the defendant when the defendant collapsed outside. Metcalf said the defendant eased down to the ground and began to shake. However, the defendant was able to respond to verbal commands during this time. Based on the defendant's slurred speech, unsteady gait, aggressiveness, strong odor of alcohol, and bloodshot eyes, Metcalf believed the defendant was intoxicated.

Don Coffer was the correctional officer at the jail when the defendant was booked. He stated that he smelled alcohol on the defendant and that the defendant appeared intoxicated. Coffer said the defendant caused no problem at the jail.

Joanne Nard, the defendant's wife, was the first witness called by the defense. By way of background, she said they had been married for twenty-eight years. The defendant was a long-haul truck driver and a diabetic. The defendant who had just returned from a stint at work on March 24th, arrived home at 9:00 or 10:00 that morning. She said he had a steak and drank two beers before leaving to visit his brother. The defendant had checked his blood sugar level, and it was 380 to 386. The defendant returned from his brother's home shortly after 6:00 p.m., and Ms. Nard thought the defendant drank more during his absence from home. The defendant was dizzy, and a check of his blood sugar revealed it was elevated to 553. The defendant put on some oversize shorts, took a blood pressure pill, and went to sleep. Around 9:00 or 9:30 that night, the defendant's nephew came by and asked for a ride to his girlfriend's house. The defendant got out of bed to take the nephew.

The defendant's nephew, Edward Lamont Wood, testified to his arrival at the defendant's residence at 9:00 or 9:30 p.m. He stated that the defendant did not drink anything on the trip to Winchester and that there was no alcohol in the vehicle.

The defendant testified that after his arrival home from work on March 24th, he went to the store and bought a six pack of beer and a steak. Although he drank two beers, he said he hardly ate anything. The defendant said he went to his brother's residence about noon and returned home within thirty or forty minutes. He was dizzy on his return and went to bed. He was awakened by his nephew that night and then took his nephew to Winchester. While returning home, the defendant said he was stopped in Cowan by the police officer.

The defendant told Officer Baker that he had drank two beers. When requested by Baker to perform sobriety tests, the defendant said he performed "about two." He then said he was demonstrating he could do a push up in what the officer had called rolling around on the ground.

The defendant maintained that he was "under control" and not under the influence. He said that he could not recall the events that happened after he got a drink of water at the hospital.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

**Driving Under The Influence**

Tennessee Code Annotated section 55-10-401, in pertinent part, provides:
It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system . . .

It is not disputed that the defendant was driving his vehicle on the public highways and streets when he was stopped for speeding. The defendant, however, contends that the evidence is insufficient to prove that he was under the influence of an intoxicant. The jury had the benefit of hearing the testimony of the witnesses, as well as viewing the video of the defendant at the traffic stop.

The prosecution witnesses who encountered the defendant on the day of his arrest, without exception, testified they believed him to be intoxicated. Their individual descriptions varied, but included the following characteristics as exhibited by the defendant: a strong odor of alcohol, an unsteady gait, aggressive behavior, and slurred speech. The jury was entitled to accept these classical symptoms as evidence of the defendant's intoxication and reject the defendant's testimony to the contrary. There is ample evidence in the record to sustain the defendant's conviction for driving under the influence, and we affirm the judgment.

**Disorderly Conduct**

The offense of disorderly conduct is defined by Tennessee Code Annotated section 39-17-305:

(a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:
    (1) Engages in fighting or in violent or threatening behavior;
    (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or
    (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
(b) A person also violates this section who makes unreasonable noise which prevents others from carrying on lawful activities.
(c) A violation of this section is a Class C misdemeanor. [Acts 1989, ch. 591, § 1.]

In this case, the framing of the indictment, and the jury instructions, indicate that the State was prosecuting the defendant on disorderly conduct for his "threatening behavior." Officer Baker testified that the defendant was loud, belligerent, and out of control at the time of the attempted field sobriety tests. The officer also told about the defendant rolling on the ground as an unscheduled and unrequested element of the sobriety testing. The officer said he found the defendant's actions to be threatening.

Clayton Williams, the other Cowan officer, was present at the traffic stop and transported the defendant to the hospital. He stated that the defendant yelled, screamed, and refused to cooperate during the sobriety tests. He said the defendant felt he was being "picked on" and responded by asking if the officers wanted him to "act like a monkey, do back flips, roll on the ground." During the transport to the hospital, the defendant was not violent but was loud and belligerent according to the officer. Williams said he felt the defendant's actions at the traffic stop were threatening. He also witnessed the defendant's feigned seizure outside the hospital.

Christy Brown, the charge nurse at the hospital, stated that the security guard had to step between the defendant and her because the defendant was becoming "very aggressive." The security guard, Joe Metcalf, said the defendant stood up and became "a little aggressive" and Metcalf stepped between the defendant and the nurse.

None of the witnesses testifying as to the defendant's "threatening" or "aggressive" behavior make mention of any verbal threats or attempts of violence on the defendant's part. There is not so much as even a clenched fist or a raised hand mentioned in their testimony. We are mindful, however, that the jury had the opportunity to view the video taken at the time of the sobriety tests which may very well have conveyed more menace than the officers' testimony demonstrates. It is also significant that the security guard felt it necessary to shield the nurse at the emergency room from the defendant. For these reasons, we conclude that a rational jury could find the defendant

guilty of disorderly conduct by his threatening behavior at either the scene of the arrest or at the hospital.

We are mindful that this analysis might raise inquiry regarding the unanimity of the jury's verdict and whether the State was required to make an election of offenses. See Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). However, the defendant's issue concerns only the sufficiency of the evidence. The closing arguments of counsel, as well as the videotape, were not included in the record. We are unable to determine from the record whether or not "plain error" occurred due to any lack of a proper election of offenses by the State.

The defendant received a concurrent sentence of ten weekends and thirty days probation for his conviction of disorderly conduct. This offense is designated as a Class C misdemeanor in Tennessee Code Annotated section 39-17-305. The maximum sentence for a Class C misdemeanor is statutorily limited to thirty days. See Tenn. Code Ann. § 40-35-111(e)(3). We therefore remand for modification and correction of the judgment to reflect deletion of the thirty days probation as to the disorderly convict conviction.

For the foregoing reasons, we conclude that the defendant has failed to prove the evidence was insufficient to support his convictions for DUI and disorderly conduct. We therefore affirm the convictions and remand for correction of the judgment as to sentencing on the disorderly conduct conviction.

_____
JOHN EVERETT WILLIAMS, JUDGE