# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2013

## STATE OF TENNESSEE v. LEVESTER TAYLOR

**Appeal from the Criminal Court for Davidson County**
**No. 2009A934     Monte Watkins, Judge**

---

**No. M2012-00732-CCA-R3-CD - Filed February 4, 2014**

---

The Defendant, Levester Taylor, was convicted by a Davidson County jury for multiple counts of aggravated sexual battery and rape of a child. The trial court imposed a sentence of 10 years at 100% for each aggravated sexual battery and 20 years at 100% for each rape of a child, and ordered the sentences to run consecutively for an effective sentence of 200 years in the Department of Correction. On appeal, the Defendant argues that the evidence is insufficient to sustain his convictions and that the trial court erred imposing an effective sentence of 200 years. Upon review, the Defendant's judgments of conviction are affirmed, the sentences imposed by the trial court are vacated, and the case is remanded for a resentencing hearing, following the Defendant's election to proceed under the pre-2005 sentencing act or the amended sentencing act accompanied by the Defendant's written waiver of his ex post facto protections.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Vacated and Remanded for Sentencing**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Michael A. Colavecchio, for the Defendant-Appellant, Levester Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

The Defendant, Levester Taylor, was indicted for multiple counts of aggravated sexual battery and rape of child against his minor step-daughter, T.R.[1]

**Trial.** Brenda Marable, the mother of the minor victim, testified that the victim was born on January 7, 1994. She identified the Defendant at trial as her ex-husband and the biological father of her younger son, Q.T. The Defendant began living with Ms. Marable and her children in 1997 and the two married in 1998, when the victim was four years old. He continued to live with them until the victim was in the seventh grade. During that time period, the family lived in four different residences throughout the Davidson County area. They lived on Lakehurst Drive from 1998 to 2000, when the victim was ages four to six years old; on Jones Avenue from 2000 to 2004, when the victim was ages six to ten years old; on Westchester from 2004 to 2005, when the victim was ages ten to eleven years old; and on Cooper Terrace from 2005 to 2006, when the victim was ages eleven to twelve years old.

Ms. Marable testified that she confronted the Defendant about possible abuse when the victim was eleven years old after getting a phone call from the victim alleging inappropriate behavior by the Defendant. The Defendant denied the allegations and continued to live with the family for the next nine months. Ms. Marable testified that she did not call the police at that time because she "wanted to believe it wasn't true." She began saving money to move to a new house with her children. She ended her relationship with the Defendant and ultimately divorced him in 2007 or 2008, after she and her children moved out of the house. An investigation into the alleged sexual abuse was not initiated until several years later, when the victim was in the ninth grade and disclosed the abuse at school. On cross-examination, Ms. Marable acknowledged that she and her children continued to live with the Defendant for nine months to a year after the victim's initial allegations of abuse. She also agreed that she never saw or heard anything that would indicate abuse.

T.R., the victim in this case, was seventeen years old at the time of trial. She identified the Defendant in court and testified that he sexually abused her from the ages of six to twelve. She testified that the first incident of abuse occurred when she was six years old while the family was living at the house on Lakehurst Drive. She recalled that the Defendant came into her bedroom at night while her mother was sleeping and "began rubbing on" her vagina over her underwear. She cried during the incident and the Defendant told her "shh" and then left her bedroom. The victim described another incident that occurred while the family was living on Jones Avenue. During this incident, the Defendant

---

[1] It is the policy of this Court to refer to minor victims of sexual abuse and their minor family members by their initials.

came into her bedroom at night while her mother was sleeping and "examined [her] private parts." She recalled that the Defendant slid her clothes off partially and touched her inside and outside of her vagina. He also lifted her shirt and rubbed on her breasts. After he left, the victim went into her closet and slept there for the rest of the night. Another time, while still living at the house on Jones Avenue, the Defendant came into the victim's bedroom while it was raining and touched the outside of her vagina. She pretended to be asleep because she "didn't want to get in any trouble." On another occasion, the Defendant came into the victim's bedroom and she attempted to leave, but he "grabbed her" and "laid [her] back down so [she] wouldn't move." He held her down with his arm across her stomach, opened her legs, and touched the outside of her vagina. The victim recalled that all of the incidents at the house on Jones Avenue occurred while her mother was asleep or at work. On two occasions, the victim told the Defendant that she was going to tell her mother, but he warned her not to because she would get in trouble.

When the victim was eleven, her family moved into a house on Westchester. One morning after the victim's mother left for work, the Defendant came into the victim's bedroom and touched on the inside and outside of the victim's vagina and on the victim's breasts. The victim "got scared" and ran into the bathroom. After the Defendant left for work, the victim called her mother and told her what the Defendant had done. She did not tell her mother everything that had happened over the years because she was "scared" of her "family getting hurt." She clarified that she "wasn't sure if [the Defendant] would take his anger out on [her] mom" because she had told on him. The victim's mother confronted the Defendant about the allegations and he apologized to the victim and said it would not happen again.

When the victim was twelve years old, her family moved into a house on Cooper Terrace. One day while her mother was at work, the victim came home from school and found the Defendant watching pornography on television. After she went to sleep that night, the Defendant came into her room, picked her up and carried her to his bedroom, and rubbed his penis on the inside and outside of her vagina and "put his lips on" her vagina. The victim was scared and started to cry. The Defendant continued to rub her and it "started to hurt" so she cried harder and the Defendant told her she could go back to her own room. On another occasion, the Defendant came into the victim's bedroom and touched the inside and outside of her vagina. He left her room when she started to cry. Another time, right before the victim started her monthly period, the Defendant took the victim into his bedroom and fully penetrated her vagina with his penis. She cried because it hurt and he told her to be quiet. She kept crying and he told her to go back to her bedroom. The incident caused her to bleed into her underwear and her vagina was sore. Soon after this incident, the Defendant moved to Louisiana and the abuse never happened again.

Other than telling her mother, the victim did not tell anyone else about the abuse while it was occurring, and to her knowledge no one ever saw any of the abuse that occurred. After the abuse ended, the victim talked to her best friend about what the Defendant had done to her. When the victim was in the ninth grade, approximately two years after the abuse ended, she took a survey at school given by Terry Barksdale, a child abuse counselor. The survey asked a variety of questions about the students' home life, including whether they had ever been sexually abused. The victim recalled that Mr. Barksdale told students to answer truthfully and assured them that there would be no follow-up questions after the survey. The victim disclosed that she had been sexually abused in the survey, and a few weeks later an investigation was initiated into the allegations of abuse. The victim testified that after disclosing the abuse in the survey, she had to tell her mother and brother about the abuse. She stated that she "wish[ed] [she] had never said anything" about the abuse because "so many people are hurting."

Terry Barskdale, a counselor and case manager with the Black Children's Institute, testified that as part of his work he would routinely go into schools and interview students to see if they had "experienced any type of abuse, physical abuse, sexual abuse, and basically, see if they were having problems in school." He visited the victim's high school in October 2008, during which the victim participated in a survey and indicated that in her responses that she had been sexually abused. He set up a meeting with her "to get her to open up," and reported the information obtained to the principal and the Children Protective Services of the Department of Children's Services ("DCS").

Shayla Dix, a case manager with DCS, testified that the victim's case was referred to her in October 2008. She explained that she set up a meeting with the victim, the purpose of which was to "assess the situation to insure the child is safe, to get her story, [and] to compare what the referral has and what she tells me is her story." After meeting with the victim, she referred her to a forensic interviewer to get a "more specific[,] detailed interview by a trained forensic interviewer who specializes in interviewing children of physical or sexual abuse." She stated that the statements made by the victim in her interview were consistent with the statements made in the forensic interview.

Lisa Dupree, a forensic social worker at Our Kids Center, testified that she interviewed the victim in October 2008. During the interview, the victim described numerous incidents of sexual abuse that occurred while the victim was ages six to twelve. The victim reported that the Defendant touched her with his hands, fingers, and penis, and eventually "raped" her more than once when he "forced his private into her." The victim also reported that he touched her breasts and "butt" with his hands and put his mouth on her vagina. Ms. Dupree recalled that the victim denied participating in any sexual activity with peers and denied using tampons.

-4-

Hollye Gallion, a pediatric nurse practitioner at Our Kids Center, was qualified to testify as an expert in the field of pediatric nursing and forensic examinations without objection by the Defendant. She conducted a physical examination of the victim in October 2008 and observed two hymenal tears that had healed but remained visible. She opined that these injuries were consistent with a "penetrating trauma" and consistent with the sexual abuse described by the victim. She further opined that nothing else in the victim's medical history could account for the two injuries to the victim's hymen other than penile penetration. On cross-examination, Ms. Gallion acknowledged that she could not determine when the injuries to the victim's hymen occurred.

Following deliberation, the jury convicted the Defendant of eight counts of aggravated sexual battery and six counts of rape of a child.

**Sentencing.** Following arguments by counsel at the December 8, 2011 sentencing hearing, the trial court made the following oral findings and imposed an effective sentence of 200 years confinement:

> I think I have to start with [Tennessee Code Annotated section] 40-35-103(1)(b), that is "confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similarly offenses." Although it is mandatory prison time I think it's appropriate that the Court would read that into the record.
>
> The next thing the Court has to consider are the enhancement factors. And as pointed out by the State, enhancement factor number one applies because of [the Defendant's] previous history of criminal conduct. Enhancement factor number four, because of the vulnerable age of the child. Enhancement factor number seven, that he committed this to gratify a desire for pleasure. And, finally, enhancement factor number fourteen, that he was in a position of trust with respect to this child, being a stepfather of this particular child. As such, all of those factors apply in this particular case.
>
> Having applied those factors, the Court believes that as to each count fo aggravated sexual battery the sentence shall be ten years. As to each count of rape of a child the sentence should be twenty years.
>
> Now, with respect to [Tennessee Code Annotated section] 40-35-115, obviously, subsection five applies because he is convicted of two or more statutory offenses involving sexual abuse of a minor. So the Court believes

that the sentences should run consecutively; and because it is necessary to protect the public against further criminal conduct by the [D]efendant, and that the consecutive sentence reasonably relates to the seriousness of the offenses committed.

. . . . That is a grand total of two hundred years. And that will be the judgment of the Court.

After the trial court's denial of his motion for new trial, the Defendant timely appealed his convictions and sentences to this Court.

## ANALYSIS

**I. Sufficiency of the Evidence.** The Defendant first argues that the evidence is insufficient to sustain his convictions. He asserts that the State's only proof at trial was the testimony of the victim, T.R., which he maintains was not credible. Specifically, he notes that the victim's mother did not believe her allegations at first and the victim waited several years after the abuse ended to report the abuse to any authority figure. Additionally, he asserts that the trial court failed to act as a thirteenth juror pursuant to Rule 33(d) of the Tennessee Rules of Criminal Procedure. The State asserts that the evidence was sufficient to sustain the Defendant's convictions and that the trial court properly fulfilled its role as the thirteenth juror. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this Court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). In addition, as relevant here, the Tennessee Supreme Court has

determined that the testimony of a child victim, alone, is sufficient to uphold a conviction for child rape. State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003); see State v. Warren Curnutt, No. M2006-00552-CCA-R3-CD, 2007 WL 1482390, at *11 (Tenn. Crim. App., at Nashville, May 22, 2007), perm. app. denied (Tenn. Sept.17, 2007). When reviewing issues regarding the sufficiency of the evidence, this Court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This Court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Tennessee Code Annotated section 39-13-504(a)(4) defines aggravated sexual battery, a Class B felony, as "unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . [where] [t]he victim is less than thirteen (13) years of age." Sexual contact means "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). Intimate parts "includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." § 39-13-501(2). Tennessee Code Annotated section 29-13-522(a) defines rape of a child, a Class A felony, as "the unlawful sexual penetration of the victim by the defendant or the defendant by a victim, if the victim is more than (3) years of age but less than thirteen (13) years of age." Sexual penetration means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object in the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." § 39-13-501(7).

When an indictment charges that a number of sexual offenses occurred over a span of time, the State may introduce evidence of unlawful sexual activity between the defendant and the victim allegedly occurring during that time. State v. Rickman, 876 S.W.2d 824, 828-29 (Tenn. 1994). However, at the conclusion of its case-in-chief, the State must elect the particular incident for which a conviction is being sought. See Burlison v. State, 501 S.W.2d 801, 802 (Tenn. 1973). The Tennessee Supreme Court stressed the importance of election in State v. Adams:

> "This Court has consistently held that when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution

-7-

must elect the particular offense as charged in the indictment for which the conviction is sought." State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999) (citing Tidwell v. State, 922 S.W.2d 497 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801 (Tenn. 1973)). This election requirement serves several purposes. First, it ensures that a defendant is able to prepare for and make a defense for a specific charge. Second, election protects a defendant against double jeopardy by prohibiting retrial on the same specific charge. Third, it enables the trial court and the appellate courts to review the legal sufficiency of the evidence. The most important reason for the election requirement, however, is that it ensures that the jurors deliberate over and render a verdict on the same offense. Brown, 992 S.W.2d at 391; Burlison, 501 S.W.2d at 803. This right to a unanimous verdict has been characterized by this Court as "fundamental, immediately touching on the constitutional rights of an accused . . . . Burlison, 501 S.W.2d at 804.

24 S.W.3d 289, 294 (Tenn. 2000). The Tennessee Supreme Court has recognized practical difficulties present in applying the election requirement in cases of child sexual abuse, and held that the state is not required to identify the particular date of the chosen offense. Shelton, 851 S.W.2d at 137; see also, State v. John C. Crim, No. M2010-01281-CCA-R30CD, 2012 WL 76891, at *10 (Tenn. Crim. App. Jan. 10, 2012), perm. app. denied (Tenn. April 2012) (explaining that "[b]ecause young children who are victims of sexual abuse are often unable to testify that the abuse occurred on a specific date, a particular offense may be identified by other means").

> If, for example, the evidence indicates various types of abuse, the prosecution may identify a particular type of abuse and elect that offense. Moreover, when recalling an assault, a child may be able to describe unique surroundings or circumstances that help to identify an incident. The child may be able to identify an assault with reference to a meaningful event in the his or her life, such as the beginning of school, a birthday, or a relative's visit. Any description that will identify the prosecuted offense for the jury is sufficient. . . [T]he trial court should bear in mind that the purpose of election is to ensure that each juror is considering the same occurrence. If the prosecution cannot identify an event for which to ask a conviction, then the court cannot be assured of a unanimous decision.

Shelton, 851 S.W.2d at 138 (internal citations and footnotes removed).

In the present case, the State presented evidence of multiple incidents of sexual abuse of the victim by the Defendant over the course of six years. The victim testified that the abuse began when she was six years old, while living at the house on Lakehurst Drive. She described with particularity the type of abuse she endured, where the abuse occurred, and where her mother and brother were during the abuse. She went on to testify about multiple incidents of abuse that occurred at the houses on Jones Avenue, Westchester, and Cooper Terrace. She described each incident with the same particularity, providing details about type of abuse that occurred, the circumstances surrounding the abuse, where her mother and brother were during the abuse, and what she did after the abuse. Significantly, the victim distinguished between the episodes of abuse where the Defendant touched the victim's vagina with his hands and where he subjected her to penile penetration. After its case-in-chief, the State made its election of offenses, narrowing the jury's consideration to fourteen specific incidents of abuse. Although none of the incidents were identified by a particular date, each was identified by a specific description supplied by the victim to distinguish it from the other incidents. See Shelton, 851 S.W.2d at 138.

In challenging the sufficiency of the evidence, the Defendant does not assert that the State's election of offenses was inadequate or attack the evidence supporting any one count in particular. Instead, the Defendant broadly asserts that the victim's testimony is not credible, noting that the victim's mother did not initially believe the victim's allegations and highlighting the fact that the victim waited several years before disclosing the abuse to anyone else. This argument is without merit. As noted above, credibility determinations and weight afforded to the evidence are matters reserved for the jury. This Court, on appeal, will not reweigh or reevaluate the evidence. Moreover, the testimony of a child victim, alone, is sufficient to uphold a conviction for child rape. State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003). Here, the victim testified in specific detail about each elected offense. Although not necessary to uphold a conviction, this testimony was corroborated further through testimony by the victim's mother, the DCS case manager, and the forensic interviewer. Likewise, the physical evidence was consistent with the victim's account of her sexual abuse. In fact, Ms. Gallion testified that based on the victim's medical history, penile penetration was the only explanation for the injuries to the victim's hymen. Viewed in the light most favorable to the State, we conclude that a rational juror could find the Defendant guilty of all fourteen offenses beyond a reasonable doubt. He is not entitled to relief.

Likewise without merit is the Defendant's contention that the trial court failed to fulfill its role as the thirteenth juror. Rule 33(d) of the Tennessee Rules of Criminal Procedure states "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(d); State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995) (holding the trial court has a duty to serve as the thirteenth juror). Only if the record contains statements by the trial judge indicating

disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror may an appellate court reverse the trial court's judgment. Id. Otherwise, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). If the reviewing court finds that the trial judge has failed to fulfill his or her role as thirteenth juror, the reviewing court must grant a new trial. State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995). Here, the trial court denied the motion for new trial, stating "I remember this particular case. I remember it well. And all things considered the Court is going to respectfully deny the motion for new trial." The record shows that the trial court agreed with the jury's verdict after considering the evidence presented at trial. The trial court properly fulfilled its role as the thirteenth juror, and therefore, this issue is not subject to appellate review.

  **II. Sentencing.** The Defendant next argues that the trial court erred in imposing an effective sentence of 200 years confinement. The Defendant contends that the trial court failed to properly consider and apply the enhancement factors when determining the length of his sentence. Additionally, the Defendant asserts that the trial court abused its discretion by ordering that the sentences be served consecutively. The State responds that the trial court acted within its discretion in sentencing the Defendant, and therefore, should be affirmed. Although not addressed by the parties, we are compelled to note at the outset that the bulk of the Defendant's crimes occurred prior to the 2005 amended sentencing act and the trial court sentenced the Defendant in accordance with the amended act without entry of a waiver of ex post facto protections. Accordingly, we reverse the judgments and remand for resentencing.

  The Compiler's Notes to amended Tennessee Code Annotated section 40-35-210 (2006) identified the eligible defendants who could elect the pre-2005 sentencing act or the amended sentencing act:

> Offenses committed prior to June 7, 2005, shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of the act by executing a waiver of such defendant's ex post facto protections. Upon executing such a waiver, all provisions of the act shall apply to the defendant.

Most of the Defendant's crimes occurred well before the 2005 amendments to the sentencing act took effect.[2] However, the Defendant was not sentenced until December 8, 2011. Thus, he had the option of being sentenced under the pre-2005 sentencing act or the amended sentencing act. There is no waiver of the Defendant's ex post facto protections in the record, which would normally mean that the Defendant's sentence would be governed by the pre-2005 sentencing law. However, the transcript of the sentencing hearing makes clear that the trial court sentenced the Defendant pursuant to the 2005 amended sentencing act.

Because the trial court sentenced the Defendant under the 2005 amended sentencing act without a written waiver of his ex-post facto protections, we remand the case so that the Defendant can elect either (1) the pre-2005 sentencing act, or (2) the amended sentencing act upon his written waiver of his ex post facto protections. See State v. Quincy Bryan Banks, No M2007-00545-CCA-R3-CD, 2008 WL 1699440, at *7 (Tenn. Crim. App., Nashville, Apr. 11, 2008), perm. app. denied (Tenn. Aug. 25, 2008). At the resentencing hearing for this case, neither the Defendant nor the State is limited to the proof that they presented at the December 8, 2011 sentencing hearing. Id. Each party may submit additional evidence that is relevant and permitted under the sentencing scheme that the Defendant elects. Id.

## CONCLUSION

The Defendant's convictions for aggravated sexual battery and rape of a child are affirmed. The sentences imposed by the trial court are vacated, and we remand the case to the trial court for a resentencing hearing to determine the length and manner of his sentence, following the Defendant's election to proceed under either the pre-2005 sentencing act or the amended sentencing act accompanied by the Defendant's written waiver of his ex post facto protections.

_____
CAMILLE R. McMULLEN, JUDGE

---

[2] The indictments reflect that Counts 1, 2, and 3 occurred between January 7, 2000 and October 19, 2003; Counts 4, 5, 6, 7, 8, 9, and 10 occurred between January 7, 2003 and October 19, 2005; Counts 10, 11, 12, 13, and 14 occurred between January 7, 2005 and October 19, 2007.