FILED

01/30/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 17, 2019

## DWAYNE SCOTT FRANKLIN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 2018-CR-97     Franklin L. Russell, Judge**

_____

### No. M2018-02138-CCA-R3-PC
_____

A Marshall County jury convicted the Petitioner, Dwayne Scott Franklin, of three counts of rape of a child, for which he received an effective sentence of sixty years imprisonment. See State v. Dewayne Scott Franklin, No. M2017-00180-CCA-R3-CD, 2018 WL 1100962 (Tenn. Crim. App. Feb. 27, 2018). The Petitioner subsequently filed a petition for post-conviction relief alleging that lead counsel and co-counsel were ineffective in failing to call the Petitioner's girlfriend as a witness at trial, in failing to request a bill of particulars, and in failing to request a formal election of offenses. Following a hearing, the post-conviction court denied relief, and the Petitioner now appeals. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Garrett D. Haynes, Shelbyville, Tennessee, for the Petitioner, Dwayne Scott Franklin.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Drew Wright, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was indicted for three counts rape of a child, with each count alleging the same victim, the same type of sexual penetration, and the same time frame of June 2013 to October 2013. The proof adduced at the Petitioner's October 2017 trial established that the Petitioner vaginally raped the seven-year-old victim on three distinct occasions in 2013. The victim thought she might get in trouble, so she did not tell

anyone about the abuse until two years later. While the victim could not remember the exact dates of the offenses, she described the first rape as occurring after the start of the school year in 2013 at the Maple Grove Apartments in the Petitioner's bedroom; the second rape as occurring two weeks after the first rape at the Maple Grove Apartments in the Petitioner's bedroom; and the third rape as occurring a week before Halloween at the Peartree Village Apartments in the Petitioner's bedroom. The victim was friends with the Petitioner's two daughters, and they initially lived in the same apartment complex. Each of the three rapes would occur when the victim came to the Petitioner's apartment to play with his daughters, while the Petitioner was alone with the children. As the girls would prepare to go outside to play, the Petitioner would call the victim to his bedroom. He would then order her to lie down on a floor mattress, put an orange towel over her head, pull down her pants and underwear, and rape her. The Petitioner's then-wife testified that he had moved out of the apartment and was living with a friend by April 2013 but that he occasionally returned to the apartment to watch the children while she worked the "late shift." The victim and her mother both testified that the Petitioner lived at the Maple Grove apartments at the time of the first two rapes. Dewayne Scott Franklin, 2018 WL 1100962, at *1-2.

After the first rape, the victim went home, took a shower, and left her clothing on the floor. The victim's mother found the victim's underwear, which had blood in the crotch. She asked the victim about it, and the victim told her she had been climbing on the counter and had fallen on a cabinet door. The victim's mother testified that she accepted this explanation because climbing on the counters was characteristic behavior for the victim. The victim testified that she lied to her mother because she was scared of the Petitioner. The Petitioner moved into the Peartree Apartments, where the third rape occurred, on September 11, 2013. The Petitioner's lease, showing the dates of tenancy, was introduced into evidence. The Petitioner's then-wife testified that she was familiar with the new apartment and that the bed in the new apartment consisted of a mattress on the floor. The Petitioner's then-wife and eldest daughter also confirmed that the Petitioner had an orange towel, that it was a "burnt orange," and that the Petitioner took it with him when he moved. The Petitioner's eldest daughter further confirmed that the victim spent the night at the Petitioner's new apartment, that the three girls were going to look at the tree house, and that the Petitioner called to the victim as they were leaving. The Petitioner's eldest daughter testified that she and her sister continued to the tree house and shot their new BB guns for "probably" less than ten minutes. Dewayne Scott Franklin, 2018 WL 1100962, at *2-3.

Following his convictions and sentences, the Petitioner appealed, and this court affirmed. Id. at 3. On April 17, 2018, the Petitioner filed a pro se petition for post-conviction relief claiming ineffective assistance of counsel based on the failure to call the Petitioner's girlfriend as a witness, the failure to request a bill of particulars, and the

failure to request a formal election of offenses. On August 7, 2018, appellate counsel certified that he had spoken with the Petitioner, investigated all potential claims, and concluded that it would not be necessary to amend the pro se petition. A post-conviction hearing was held on October 19, 2018, during which lead counsel, co-counsel, the Petitioner's girlfriend from 2013, and the Petitioner testified.

The Petitioner's then-girlfriend, Angela Lynch, testified and explained that she and the Petitioner were cohabitating at the time of the rapes. Although the Petitioner did not live at the Maple Grove Apartments at the time of the rapes, she agreed that he would go to the apartments to watch his daughters. His daughters rarely came to stay with them at the Northgate Arms Apartment complex. On cross-examination, she testified that she did not watch the Petitioner's comings and goings and that he "pretty much went and did as he needed to." While she was surprised to learn that the Petitioner abused children while they were dating, she confirmed that he would go to the Maple Grove Apartments occasionally and that she did not know what he was doing there or how long he was gone. Finally, she testified that she did not appear as a witness at trial because she was never contacted by the Petitioner's attorneys.

Lead counsel testified that he did not call Angela Lynch as a witness because he had not known of her existence until trial was underway. The Petitioner told lead counsel about two roommates who could have acted as witnesses, but lead counsel chose not to call them because they had both been charged with similar child sex-offenses. Had lead counsel known about Angela Lynch, he would have tried to interview her as a potential witness. However, lead counsel opined that he probably would not have called her as a witness because her testimony at the post-conviction hearing was duplicative of other trial witnesses' testimony and was consistent with the prosecution's theory.

In regard to the bill of particulars, lead counsel did not believe that it would have been useful, or even possible. After reviewing the discovery material, lead counsel concluded that the time frame was narrowed down as much as it could have been for a child witness and that the defense was given a much more specific timeframe than usually given in child sex-offense cases. The victim testified that the first rape occurred just after school had started in 2013, the second rape occurred two weeks after the first, and the third rape occurred a week before Halloween in 2013. Lead counsel did not believe the victim could have been more specific than she had been, and he felt that the defense had a good understanding of the timeline.

Finally, lead counsel testified that an election of offenses was unnecessary since the specific instances were well defined in testimony and in the jury verdict forms. Lead counsel testified that he and co-counsel had worked with the trial court "off record" to craft the verdict forms, which was common in that court. He asked that the form for

count one not include the fact that the victim's mother had discovered blood in her daughter's underwear after the first rape, and he felt that the specification of relative time and location was enough to ensure jury unanimity. He believed that had the defense included any of the graphic details distinguishing count one and count two on the verdict forms that it would have inflamed the jury against his client. The verdict forms showing that each count was differentiated for the jury by location were admitted as an exhibit to the hearing.

Co-counsel testified consistently with the testimony of lead counsel. Co-counsel testified that the Petitioner had not mentioned Angela Lynch as a potential witness until after trial had started. Co-counsel had met with the Petitioner several times before trial, but the Petitioner never mentioned that he had been living with Angela Lynch at the time of the offenses. In fact, co-counsel was unsure if the Petitioner had ever mentioned Angela Lynch at all, or if the defense had noticed her name on a sheet of paper in the record by themselves. Nevertheless, co-counsel did not believe that her testimony at trial would have been useful. He also opined that a bill of particulars was unnecessary due to the well-defined timeline and that a formal election of offenses was unnecessary because the State had already alleged the instances with enough specificity.

The Petitioner testified that instead of living with his wife and daughters at the time of the offenses, he was living with Angela Lynch. He testified that he only went to the Maple Grove Apartments to pick up his daughters or to put them to bed at night. He testified that he did not stay at the apartments for extended periods of time. He was also unclear regarding what he told trial counsel about his living situation at the time of the offense. Although he was unsure about the details of his conversations with trial counsel, he was positive that he brought Angela Lynch to their attention at some point. He was also certain that her testimony would have made a difference at trial; but he later conceded that her testimony was duplicative of other prosecution witnesses, and that it did not establish an alibi.

The Petitioner testified that he was unable to clearly recall his living situation during the time period of the offenses because two years had passed between the offenses and his indictment. This, combined with the stress of such serious accusations, had impaired his memory and made it difficult to remember key facts that could have helped in his defense. If the Petitioner had been given a more specific time frame through a bill of particulars, he would have been able to recall alibi evidence and assist in his own defense.

In its November 15, 2018 memorandum opinion and order denying relief, the post-conviction court accredited the testimony of trial counsel and determined that the Petitioner was not credible. The post-conviction court also found that the decision not to

- 4 -

seek a bill of particulars was a reasonable trial strategy and that trial counsel's decision to differentiate each rape based on the verdict forms rather than a formal election of offenses was a reasonable alternative to ensure protection against double jeopardy and unanimous verdicts. The post-conviction court further found that the strategic decisions made by Petitioner's trial counsel were reasonable and that the adoption of another strategy was unlikely to have led to a different outcome. It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred in denying post-conviction relief. Specifically, he contends that trial counsel were ineffective in failing to properly investigate and call Angela Lynch as an alibi witness; in failing to request a bill of particulars; and in failing to request a formal election of offenses. In response, the State argues, and we agree, that the post-conviction court properly denied relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**Failure to call Angela Lynch as a Witness.** The Petitioner contends that had Angela Lynch given her testimony at trial, she would have broken up the prosecution's timeline and shown that the Petitioner was not living at the Maple Grove Apartments at

the time of the offenses.  In response, the State contends that the Petitioner is not entitled to relief as to this issue because the post-conviction testimony of Angela Lynch was duplicative of several other trial witnesses' testimony, and it established that the Petitioner had access to the victim.   In regard to this issue, the post-conviction court accredited the testimony of trial counsel in denying relief.  Each counsel testified that the Petitioner did not tell them that he lived with Angela Lynch at the time of the offenses until trial had already begun.  The post-conviction court determined that trial counsel could not have been deficient in failing to call a witness of whom they were not aware. Finally, the post-conviction court recognized that Angela Lynch would not have served as an alibi for the Petitioner because her testimony demonstrated that the Petitioner had access to the victim.  We agree with the post-conviction court and conclude that the Petitioner has failed to establish deficient performance or prejudice.  He is not entitled to relief.

**Failure to Request a Bill of Particulars.**   The Petitioner contends that he received ineffective assistance of counsel based on trial counsels' failure to request a bill of particulars.  He asserts that if he had a narrower timeframe for the accusations, he could have participated more in his own defense.  In response, the State contends that the timeline provided at the preliminary hearing and at trial provided the Petitioner with sufficient notice of the offenses for which he was on trial.  Moreover, the State argues that the Petitioner fails to show how a bill of particulars would have helped him anymore than the timeline that was already established.

In denying relief as to this issue, the post-conviction court reasoned as follows:

The Petitioner alleges that defense counsel failed to seek a bill of particulars "in order to distinguish the differences between [sic] the three separate acts of Child Rape that were charged against the Petitioner." All three counts of the Indictment allege child rape of a child named [TP][1], seven years of age, "between June 2013 to October 2013..." by vaginal penetration. The three counts are virtually identical. No bill of particulars was sought by defense counsel, but none was necessary. There was a preliminary hearing in the General Sessions Court, and the same counsel who handled the jury trial also handled the preliminary hearing. Counsel were fully aware of all the details of the allegations of the three separate incidents after the preliminary hearing. The child's testimony at the hearing provided the same details that were provided at trial as to the locations of the incidents, as to what was done to her and by whom, and as to the chronological order of the incidents. As is always the situation in a case of

---

[1] It is the policy of this Court to refer to minor children by their initials.

the rape of a young child, the victim is not able to provide an exact date, but defense counsel came out of the preliminary hearing with as many details of the rapes as the child would ever provide, before or during trial. Defense counsel knew both physical addresses where the rapes occurred and knew that approximately two weeks separated the first two incidents and knew that the third incident occurred at a slumber party which took place close to Halloween. There was no evidence presented at the evidentiary hearing on the PC to establish that there was more detail that would or could have been provided by the State in a bill of particulars other than the information which defense counsel already had. There was no evidence presented that there was significant detail presented at trial that the defense did not have after the preliminary hearing. The failure to seek a bill of particulars did not fall below the applicable standard, and it cannot be found that but for the "failure" to seek a bill of particulars, the outcome of the jury trial would have been any different.

Here, we are reminded that the purpose of a bill of particulars is threefold: (1) to provide the "defendant with information about the details of the charge against him if this is necessary to the preparation of his defense[;]" (2) to assure that the defendant has the opportunity to "avoid prejudicial surprises at trial[;]" and (3) to preserve the defendant's plea against double jeopardy. State v. Sherman, 266 S.W.3d 395, 408-09 (Tenn. 2008). A bill of particulars is not a discovery device. Id. at 409. Instead, "the purpose of a bill of particulars is to alert criminal defendants as to how the State will proceed with the litigation. The purpose is not to lock the State into a specific theory of prosecution." Id. "[A] conviction must be reversed if trial testimony establishes that the [S]tate had in its possession, either actually or constructively, additional information that could have helped pinpoint the nature, time, or place of the offense, and withheld that information from the defendant." State v. Byrd, 820 S.W.2d 739, 742 (Tenn. 1991).

Upon our review, we agree with the post-conviction court and conclude that the Petitioner has failed to establish deficient performance by trial counsel or prejudice to his case based on the failure to request a bill of particulars. The record shows that trial counsel were the same counsel who represented the Petitioner at the preliminary hearing stage, where they initially heard the victim testify regarding the timeline and specifics of each offense of rape. Trial counsel testified at the post-conviction hearing that a bill of particulars was not necessary because the timeframe was narrowed down as much as it could have been for a child witness and that the defense was given a more specific timeframe than normally given in other child sex-offenses cases. The victim testified that the first rape occurred just after school had started in 2013 at the Maple Grove Apartments, the second rape occurred two weeks after the first at the Maple Grove Apartments, and the third rape occurred a week before Halloween at the Peartree

Apartments. Based on this testimony, lead counsel did not believe the victim could have been more specific than she had been, and he was prepared to defend the charges against the Petitioner in the indictment. In addition, the Petitioner has failed to show how a bill of particulars would have aided his defense any more than the timeline that was already provided by the victim at the preliminary hearing. See Marcus Anthony Pearson v. State, No. M2015-01159-CCA-R3-PC, 2016 WL 2779229, at *13 (Tenn. Crim. App. May 13, 2016) (affirming denial of post-conviction relief where petitioner failed to provide evidence of what a bill of particulars would have revealed outside his own speculation). Accordingly, the Petitioner has failed to establish deficient performance or prejudice, and he is not entitled to relief.

**Failure to Request a Formal Election of Offenses.** Finally, the Petitioner contends that trial counsel were ineffective in failing to request a formal election of offenses. The Petitioner argues that the facts alleged at trial are too similar and risk a patchwork verdict from the jury. The State responds that the victim testified to specific and discrete offenses and that the verdict forms reflected separate offenses. In denying relief on this issue, the trial court reasoned as follows:

> The Petitioner alleges that defense counsel "failed to challenge the court for failing to require the State to present an Election of Offenses...." As previously stated, all three counts of the Indictment allege child rape of [the victim] "between June 2013 to October 2013..." by vaginal penetration. It is true that the three charges are virtually identical among the three counts if only the Indictment is examined.
>
> This judge, with the agreement and assistance of counsel in all cases where the same crime is alleged in more than one count of an indictment, invariably handles the danger of less than unanimous verdicts and the danger of double jeopardy by carefully distinguishing among the counts. The uniqueness in each count is pointed out to the jury in writing and orally in two places, in the body of the charge and in the language of the verdict forms. Once the State has concluded its proof, this judge generates proposed language to allow the jury to understand which proof applies to which count. The language is presented to counsel for both sides, generally on the record, and the two sides and this judge reach an agreement on what facts distinguish among the counts.
>
> In T.P.I. 2.07 in this case, the jury was directed as follows:
>
> The rapes charged in counts 1. and 2. are both alleged to have occurred in an apartment in the Maple Grove Apartments

located at 1230 S. Ellington Parkway, Lewisburg, Marshall County, Tennessee, but one of the two alleged incident[s] is alleged to have occurred on an earlier date than the other and approximately two weeks earlier than the second alleged rape at that address. The rape charged in Count 3[,] is alleged to have occurred in an apartment located at the Peartree Village Apartments, 1199 Nashville Highway, Lewisburg, Marshall County, Tennessee. The verdict forms will identify which count you are considering on a particular verdict form and will indicate which location is alleged on a particular verdict form, and to distinguish between counts 1. And 2., [sic] both alleged to have occurred at Maple Grove Apartments at 1230 S. Ellington Parkway, Lewisburg, Marshall County, Tennessee, the verdict forms will identify a particular alleged incident as the first alleged incident or as the second alleged incident at the address.

Verdict forms 1.-8., dealing with Count 1., then identified the crime as occurring between June 2013 and October 2013 "in the first of two incidents alleged by the state to have occurred at an apartment in Maple Grove Apartments at 1230 S. Ellington Parkway, Lewisburg, Marshall County, Tennessee." Verdict Forms 9.-14., dealing with Count 2. of the Indictment, then identified the second alleged child rape as occurring allegedly between June 2013 and October 2013 "in the second of two incidents alleged by the state to have occurred at an apartment at Maple Grove Apartments at 1230 S. Ellington Parkway, Lewisburg, Tennessee." Finally, Verdict Forms 15.-20. deal with the third alleged child rape allegedly occurring between June 2013 and October 2013 "at an apartment at Peartree Village Apartments, 1199 Nashville Highway, Lewisburg, Tennessee."

T.P.I. 2.07 and the verdict forms taken together clearly distinguish among the three separate child rapes. The only other distinguishing characteristic among the three rapes was the fact that there was blood on the undergarments of the child on the first occasion. Defense counsel did not ask that this detail be added to the T.P.I 2.07 and Verdict Forms 1.-8., and this judge did not propose to include that detail for the obvious reason that the reminder of this specific detail might very well inflame the jury against the Defendant. It was a defensible trial strategy not to seek to have the jury reminded of that detail in a trial concerning the rape of a seven year old.

Defense counsel and the assistant district attorneys in this trial had all four worked frequently with this trial judge on the recurring problem of helping juries to distinguish among counts alleging violation of the same statute but in separate incidents. This was always accomplished without the necessity for a formal request for a formal election by the State. The dangers of less than unanimous verdicts and of double jeopardy were avoided by this technique, always initiated by this trial judge. The failure to seek a formal election did not fall below the applicable standard, and the failure to seek the very redundant relief of a formal election did not in any way alter the outcome of the trial to the detriment of the Defendant.

In review of this issue, we acknowledge the importance of election, as stressed by our supreme court, in State v. Adams:

> "This Court has consistently held that when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999) (citing Tidwell v. State, 922 S.W.2d 497 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801 (Tenn. 1973)). This election requirement serves several purposes. First, it ensures that a defendant is able to prepare for and make a defense for a specific charge. Second, election protects a defendant against double jeopardy by prohibiting retrial on the same specific charge. Third, it enables the trial court and the appellate courts to review the legal sufficiency of the evidence. The most important reason for the election requirement, however, is that it ensures that the jurors deliberate over and render a verdict on the same offense. Brown, 992 S.W.2d at 391; Burlison, 501 S.W.2d at 803. This right to a unanimous verdict has been characterized by this Court as "fundamental, immediately touching on the constitutional rights of an accused . . . ." Burlison, 501 S.W.2d at 804.

24 S.W.3d 289, 294 (Tenn. 2000). Simply put, the doctrine of election requires the State to elect the facts upon which it is relying to establish a charged offense where there is evidence at trial that the defendant has committed multiple offenses against the victim. State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001) (citations omitted); see also State v. Arthur Clark, No. W1999-01747-CCA-R3-CD, 2000 WL 1224756, at *2 (Tenn. Crim. App. Aug. 25, 2000), perm. to appeal denied (Tenn. Feb. 12, 2001) (explaining that the "doctrine of election requires the State to elect a set of facts when it has charged a defendant with one offense, but there is evidence of multiple offenses"); State v. Harris, No. M2004-00049-CCA-R3-CD, 2005 WL 2255488, at *14-15 (Tenn. Crim. App. Aug.

23, 2005) (failure to elect was harmless error where the State advised that it intended to present proof only as to the three charged offenses and, on direct examination, elicited proof from the two victims only of those incidents).

The Tennessee Supreme Court has likewise recognized that applying the election doctrine in child sexual abuse cases presents practical difficulties. State v. Qualls, 482 S.W.3d 1, 10-11 (Tenn. 2016). As a result, it has not insisted upon a single means of making an election and has instead allowed "the State some latitude in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed." Id. (internal citations omitted). Additionally, "[t]here is no right to a perfect election, and indeed, as this Court has recognized, the election requirement may be satisfied in a variety of ways." Id. Examples of how the State may elect a particular offense include "narrow[ing] the multiple incidents by asking the victim to relate any of the incidents to a specific month," see State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997), and "identify[ing] a particular type of abuse and elect[ing] that offense[,] ... [or] identify[ing] an assault with reference to a meaningful event in his or her life, such as the beginning of school, a birthday, or a relative's visit[.]" State v. Shelton, 851 S.W.2d 134, 138 (1993). Examples of cases where the State failed to elect a particular offense when the defendant was alleged to have committed a series of sexual acts over a lengthy period of time include State v. Brown, 992 S.W.2d 389 (Tenn. 1999) (failure to elect reversible error when the defendant was charged with rape of a child in a one count indictment that covered a six-month time frame, but the proof showed that at least ten instances of digital penetration occurred during the six months alleged, five occurring on one day and five others on different days), State v. Walton, 958 S.W.2d 724 (Tenn. 1997) (failure to elect reversible error where sexual offenses were charged in a multi-count, open-ended indictment and where the child victim testified she was raped by the defendant or that he performed cunnilingus on her on a daily basis for over a year), and Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973) (failure to elect reversible error where the defendant was charged with having "carnal knowledge" of the victim on "divers days between the summer of 1964 and August, 1969," but the proof did not show any particular date).

Applying the above law to this case, we conclude that the Petitioner is not entitled to relief. The Petitioner correctly points out that there was no formal election of offenses in this case. However, lead counsel, who had represented the Petitioner from the preliminary hearing stage, testified that an election of offenses was unnecessary because each offense of rape was well defined in testimony and in the jury verdict forms. Although counts one and two were virtually identical, lead counsel did not request the verdict form for count one to include the fact that the victim's mother had discovered blood in her seven-year-old daughter's underwear after the first rape, the only distinguishing factor, for fear that the jury would have been inflamed against the

- 12 -

Petitioner. The post-conviction court determined, and we agree, that this was reasonable trial strategy. Moreover, the victim limited her testimony to these three offenses. She described the first rape in count one as occurring after the start of the school year in 2013 at the Maple Grove Apartments in the Petitioner's bedroom; the second rape in count two as occurring two weeks after the first rape at the Maple Grove Apartments in the Petitioner's bedroom; and the third rape in count three as occurring a week before Halloween at the Peartree Village Apartments in the Petitioner's bedroom in 2013. The testimony of the victim as to three distinct offenses of rape for each count charged, all of which were delineated individually in the respective verdict forms, obviated the need for a formal election by the State. Under these circumstances, defense counsel was able to prepare for and make a defense for each specific charge, the Petitioner was protected against double jeopardy, and the jurors were able to deliberate over and render a verdict on each separate offense of rape. Accordingly, the Petitioner has failed to establish deficient performance or prejudice. He is not entitled to relief.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE